## MONEY & TAX HELP, INC.

v.

## Tom MOODY, et al.

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Dec. 7, 2004 Session.

Feb. 3, 2005.

Permission to Appeal Denied by Supreme Court Aug. 29, 2005.

Robert R. Davies, Knoxville, Tennessee for Appellants Tom Moody and SACCA Corporation.

John O. Threadgill, Knoxville, Tennessee for Appellee Money & Tax Help, Inc.

## OPINION

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and WILLIAM H. INMAN, Sr.J., joined.

This case involves the enforcement of a non-compete agreement. The issues presented are: (1) whether the court erred in enforcing the agreement against Tom Moody, a former employee of the Plaintiff, Money & Tax Help, Inc., and against Mr. Moody's wholly-owned corporation, SACCA Corporation; (2) whether the trial court erred in holding Mr. Moody personally liable for breach of an agreement signed by him on behalf of SACCA Corporation; (3) whether the damages claimed by Money & Tax Help, Inc. were too speculative; (4) whether the trial court erred in finding Mr. Moody and SACCA Corporation not liable for procurement of breach of contract under Tenn.Code Ann. § 47–50–109; and (5) whether the trial court erred in failing to offset Mr. Moody's counterclaim. We hold that the trial court erred by holding Mr. Moody personally liable for breach of the agreement and affirm the trial court's judgment in all other respects.

### I. Factual Background

In 1994, Mr. Moody was employed as an accountant by Comprehensive Business Services, Inc., predecessor of Plaintiff Money & Tax Help, Inc. That same year the assets of Comprehensive Business Services, Inc. were sold to John R. Brown.

On December 19, 1994, Mr. Moody entered into an agreement with Mr. Brown which provided in relevant part as follows:

### NON–COMPETE AGREEMENT

#### (Tom Moody—Employee)

In consideration of the consummation of a certain Asset Purchase Agreement wherein many of the assets of Comprehensive Business Services, Inc. were sold to John R. Brown hereinafter referred to as "Buyer." Tom Moody does [sic] hereinafter referred to as "Employee" hereby covenants and agrees as follows:

A.   Without Buyer's prior written consent, for a period commencing upon the termination of his employment by Buyer, and extending three years, Tom Moody will not, within the city limits of Knoxville, Tennessee, or within an area extending 50 miles in all directions from such city limits:

B.   directly or indirectly (whether as owner, director, stockholder, employee, officer, agent, broker, dealer, lessee, representative or in any other capacity) engage in the performance of any services or similar services as conducted in the operations of Seller's business which is being sold to Buyer as referenced in the Recitals, or the performance of related services such as are performed by Buyer or its subsidiaries, affiliates or franchisees, including filing tax returns and all business accounting;

C.   assist or have an interest (financial or otherwise, whether as partner, stockholder, or any type of principal or investor whatever) in a tax return preparation business and business accounting practice, provided, that ownership of note more than 1% of the outstanding stock in a corporation traded on a national securities exchange shall not of itself be viewed as assisting or having an active interest in a tax return preparation business and business accounting practice.

D.   act as an agent for or advisor or consultant to any person, firm, partnership, association, corporation or business organization, entity or enterprise (other than Buyer) that is about to become directly or indirectly engaged in a tax return preparation business and business accounting practice.

After Mr. Brown bought Comprehensive Business Services, Inc., he changed its name to Tax Help, Inc.

In August of 1997, Mr. Moody incorporated a business known as SACCA Corporation (hereinafter "SACCA"). Mr. Moody testified in his affidavit that as of September 1, 1997, "I ceased being an employee of Tax Help, Inc. and was working as an independent contractor[.]" On September 1, 1997, SACCA and Tax Help, Inc. entered into a contract styled "agreement for technical services" which provided that SACCA would provide, as independent contractor, certain accounting and tax consultation services to Tax Help, Inc. for a specified hourly fee. The agreement further provided in relevant part:

SACCA Corporation's technical services and all terms of this agreement shall be available to Tax Help, Inc., its affiliates and/or assigns, from September 1, 1998 to and including August 31, 1999.

\* \* \*

SACCA Corporation will treat as proprietary any information belonging to Tax Help, Inc., affiliated companies, and/or third parties, disclosed to SACCA Corporation in the course of provided services.... SACCA, its owners, officers and/or employees agree to be bound by and included in that certain Non–Compete Agreement dated De-

cember 19, 1994 by Tom Moody ... SACCA, its owners, officers, and/or employees agree to the term [sic] and conditions of said Non–Compete Agreement and that said terms and conditions are transferable, and thereby incorporated into this agreement herein. SACCA, its owners, officers, and/or employees agree that the execution and/or termination, for any reason, of this Agreement for Technical Services shall in no manner constitute 'termination' as outlined in Article A of said Non–Compete Agreement. SACCA, its owners, officers, and/or employees agree that said Non–Compete shall survive and extend beyond the term of this Agreement for Technical Services. SACCA, its owners, officers, and/or employees agree that if there is a conflict between the interpretation of said Non-compete Agreement and this Agreement for Technical Services, that the terms and conditions of the Non–Compete Agreement shall prevail.

(Numbering in original omitted).

Mr. Moody, on behalf of SACCA, and Mr. Brown, on behalf of Tax Help, Inc. signed a nearly identical agreement on September 1, 1998.

On June 16, 1999, Mr. Brown sold the assets of Tax Help, Inc. to Henry J. Davis, who then renamed the corporation "Money & Tax Help, Inc." SACCA, through Mr. Moody, continued to provide the same tax and accounting services to Money & Tax Help, Inc. In August of 1999, Mr. Moody presented another agreement for technical services to Mr. Davis. This agreement was very similar to the earlier ones, and it contained a paragraph with identical language regarding the incorporation of the non-compete agreement as quoted above. The parties signed the agreement, which was dated September 1, 1999.

After the sale of the business to Mr. Davis, Mr. Moody began making plans to leave Money & Tax Help, Inc. Although Mr. Moody had incorporated his business and was doing work for SACCA as an independent contractor, it appears Mr. Moody still had his office at one of Money & Tax Help, Inc.'s locations, as before the incorporation. The record suggests that Money & Tax Help, Inc. was clearly SAC-CA's primary, if not its only, source of contract work.

In July of 2000, Mr. Moody sent solicitation letters to those clients of Money & Tax Help, Inc. for whom he had done work. The letter advised that "effective September 1, 2000, I [Mr. Moody] will no longer be working with Money & Tax Help, Inc., but will be opening my own accounting practice. I want to assure you that I very much desire to continue handling your accounting matters."

On August 30, 2000, Money & Tax Help, Inc. filed this lawsuit, alleging that Mr. Moody and SACCA breached the non-compete agreement by taking a substantial number of clients when they left Money & Tax Help, Inc. Mr. Moody counterclaimed for $1,056.00, the amount of charges for services provided to Money & Tax Help, Inc. before he left, but allegedly for which he was not paid. After hearing the case on June 25, 2003, the trial court ruled that Mr. Moody and SACCA had breached the agreement and were liable for damages. The trial court offset the $77,796.00 award to Money & Tax Help by $1,056.00, which it found to be duly owing to Mr. Moody and SACCA.

## II. Issues Presented

Mr. Moody and SACCA appeal, raising the following issues:

1. Whether the trial court erred in enforcing the non-compete agreement against Mr. Moody and SACCA.

2. Whether the trial court erred in holding Mr. Moody personally liable for breach of the agreement he signed in his corporate capacity as president of SACCA.

3. Whether the trial court erred by not finding the evidence of damages presented by Money & Tax Help, Inc. was too speculative to allow recovery.

Additionally, Money & Tax Help, Inc. raises the following issues:

4. Whether the trial court erred by failing to award treble damages for inducement of breach of contract, pursuant to Tenn.Code Ann. § 47–50–109.

5. Whether the trial court erred in failing to offset the award on the counterclaim by the time for which Mr. Moody was paid but allegedly did not work for Money & Tax Help, Inc.

### III. Standard of Review

■ In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual determinations which we must honor unless the evidence preponderates against those findings. Tenn. R.App. P. 13(d); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn.1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn.1993).

### IV. The Non–Compete Agreement

■ In Tennessee, agreements in restraint of trade, such as covenants not to compete, although disfavored by law, "are valid and will be enforced, provided they are deemed reasonable under the particular circumstances." *Allright Auto Parks,*

*Inc. v. Berry*, 219 Tenn. 280, 409 S.W.2d 361, 363 (1966). The inquiry as to reasonableness under the circumstances is a fact-specific one, and there is no inflexible formula for determining reasonableness; "each case must stand or fall on its own facts." *Id.* The Supreme Court noted in *Allright Auto Parks, Inc.* that

[i]t is generally agreed that, before a noncompetitive covenant will be upheld as reasonable and therefore enforceable, the time and territorial limits involved must be no greater than is necessary to protect the business interests of the employer.

*Id.* at 363.

■ Mr. Moody argues that the trial court erred in holding that Money & Tax Help, Inc. had a properly protectable business interest in its list of accounting clients. *See Vantage Technology, LLC v. Cross*, 17 S.W.3d 637, 644 (Tenn.App.1999). But "it has long been settled that *present* customers are a protectable interest of an employer." *Thompson, Breeding, Dunn, Creswell & Sparks v. Bowlin*, 765 S.W.2d 743, 745 (Tenn.App.1987)(emphasis in original). The *Bowlin* case involved the specific context of an accounting firm. We hold the trial court did not err in its holding that Money & Tax Help, Inc. had a properly protectable business interest in this case.

■ A careful reading of the contractual language at issue here yields the conclusion that, as written, the agreement is too broad to be construed as reasonable. The non-compete agreement, quoted at length in Section I above, if enforced as written, would essentially preclude Mr. Moody (who holds a bachelor's degree in accounting but is not a CPA) from practicing his profession at all for three years within 50 miles of Knoxville.

In the case of *Central Adjustment Bureau, Inc. v. Ingram*, the Supreme Court specifically addressed the question of whether a trial court has the authority to modify a covenant not to compete which is otherwise unreasonably broad. *Ingram*, 678 S.W.2d 28, 36 (Tenn.1984). The Court answered in the affirmative and adopted a "rule of reasonableness" stated as follows:

> This rule provides that unless the circumstances indicate bad faith on the part of the employer, a court will enforce covenants not to compete to the extent that they are reasonably necessary to protect the employer's interest without imposing undue hardship on the employee when the public interest is not adversely affected.

*Id.* at 37 (internal quotations omitted).

■ Applying the rule of reasonableness adopted in *Ingram*, we hold that the non-compete agreement between the parties should be construed as prohibiting Mr. Moody and SACCA from performing, for three years, the financial and accounting services described in the contract for those clients who were presently on Money & Tax Help, Inc.'s clientele list as of the time Mr. Moody left Money & Tax Help, Inc. At trial, all of the evidence pertaining to damages presented by Money & Tax Help, Inc. involved individuals or entities, who were then present clients of Money & Tax Help, Inc., which apparently responded to Mr. Moody's solicitation and transferred their business from Money & Tax Help, Inc. to SACCA. The damages awarded by the trial court were thus not overbroad, and were in keeping with our interpretation of the agreement under the reasonableness rule.

Regarding the time limitation of three years, this court has on several occasions found such a limitation reasonable. *See Vantage Technology, LLC v. Cross*, 17 S.W.3d 637, 644 (Tenn.App.1999) and the cases cited therein; *Thompson, Breeding, Dunn, Creswell & Sparks v. Bowlin*, 765 S.W.2d 743, 745 (Tenn.App.1987); *Harvey v. Appalachian Claims Service, Inc.*, C/A No. 03A01–9410–CH–00374, 1995 WL 140746, 1995 Tenn.App. LEXIS 206, (Tenn.App. E.S. filed Mar. 31, 1995). Under the specific circumstances of the present case, we hold that the three-year restriction is reasonable.

### V. Piercing of the Corporate Veil

■ The trial court held Mr. Moody and SACCA jointly and severally liable, in effect "piercing the corporate veil" of SACCA to find Mr. Moody personally liable. Mr. Moody argues that this was error. We agree that Money & Tax Help, Inc. did not meet its burden of proving that the corporate form should have been disregarded in this case.

This court has recently restated the legal principles guiding a determination of whether a corporation's veil should be pierced as follows:

> Under Tennessee law, *there is a strong presumption that a corporation is a distinct legal entity,* independent from its directors, officers, and shareholders, and *the party seeking to impose personal liability on the directors, officers, and shareholders bears the burden of demonstrating facts sufficient to warrant piercing the corporate veil. Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn.Ct. App.1991); *Emergicare Consultants, Inc. v. Woolbright*, No. W1998–00659–COA–R3–CV, 2000 WL 1897350, at *2 (Tenn.Ct.App. Dec.29, 2000) *perm. app. denied* (Tenn.2001). The courts of this state consider several factors when determining whether to pierce the corporate veil, including: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of

stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

*Amanda Const., Inc. v. White,* C/A No. W2004–00521–COA–R3–CV, 2004 WL 2752805 at *2; 2004 Tenn.App. LEXIS 818,(Tenn. App. W.S. filed Dec.1, 2004)(emphasis added). We have noted that "the principle of piercing the fiction of the corporate veil is to be applied with great caution and not precipitately[.]" *Schlater v. Haynie,* 833 S.W.2d 919, 925 (Tenn.App.1991). Further, "[a] corporation and its stockholders are distinct legal entities even if all the stock in the corporation is owned by one stockholder." *Hadden v. City of Gatlinburg,* 746 S.W.2d 687, 689 (Tenn.1988).

In the present case, there was very little evidence presented to the trial court regarding SACCA or the way Mr. Moody operated it. The only information in this regard contained in the record is Mr. Moody's testimony that he was the sole owner and officer of SACCA, and that he incorporated his business to take advantage of tax benefits. There is no allegation of fraud or misuse of the corporate form, nor is there any evidence regarding the record keeping practices of SACCA.

Mr. Moody signed the agreement for technical services with Money & Tax Help, Inc. in his corporate capacity, as "President, SACCA Corporation." In addition, the contract specifically recites that it is between SACCA Corporation and Money & Tax Help, Inc., Inc. Keeping in mind the above-cited legal principles and guidelines, we find that Money & Tax Help, Inc. did not meet its burden in proving that the corporate fiction should be disregarded in this case, and that it was error for the trial court to do so.

It is clear from the record that Mr. Moody ceased working as an employee for Money & Tax Help, Inc. (then Tax Help, Inc.) on September 1, 1997, when he incorporated SACCA and became an independent contractor. As regards Mr. Moody personally, the three-year contractual term not to compete began on that date. Mr. Moody admits in his affidavit that "during the time period September 1, 1999, through August 31, 2000, neither I, individually, nor SACCA Corporation entered into any activity or business arrangement which conflicted in any manner with Money & Tax Help, Inc.'s interest or ... business except for approximately four (4) to five (5) clients in August, 2000." Under his contractual agreement, Mr. Moody is personally liable for any business he performed for Money & Tax Help, Inc.'s clients prior to August 31, 2000.

By signing the agreement for technical services, which Mr. Moody himself presented to Mr. Davis, he bound SACCA and its employees, including himself, from providing accounting services to Money & Tax Help, Inc.'s existing clientele for three years. Mr. Moody then proceeded to do precisely that which he agreed not to do. SACCA is therefore liable for the breach of its agreement not to compete.

■ Mr. Moody argues that he was not aware of the fact that Tax Help, Inc. had

been sold to Mr. Davis when he signed the September 1, 1999 agreement. His affidavit states "I never intended to enter into any Agreement for technical services with a corporation not owned by John R. Brown." Even without considering the fact that the record fully supports the conclusion that Mr. Moody knew, or should have known, that Mr. Davis was the new president and owner of Money & Tax Help, Inc., this argument is not relevant to the question of whether SACCA is bound by the agreement. The agreement is between the two corporations and, as the trial court found, "there is nothing in the case that indicates that Mr. Moody's obligations of SACCA Corporation were at any time to be tied to Mr. Brown's ownership."

Mr. Moody argues that the damages were too speculative to have properly been awarded. Money and Tax Help, Inc. filed an exhibit listing the name of each client lost to Mr. Moody and SACCA and the fees lost from each account. It included an estimate of one hundred individual tax returns in addition to the business clients. Money & Tax Help, Inc.'s exhibit also lists "estimated variable costs," which Mr. Moody argues should have been found by the trial court to be higher, thus reducing Money & Tax Help, Inc.'s lost profits. On the other side, Money & Tax Help, Inc. argues, as quoted from its brief, that "the court erred in failing to offset Moody's counterclaim for the time which Moody was paid but did not work." Both of these issues are factually driven, and because there was conflicting evidence presented upon each of them, they are dependent in large extent on the demeanor and credibility of the witnesses. We find the evidence does not preponderate against the trial court's conclusion that the damages were not too speculative, and that Money & Tax Help, Inc. was not entitled to an offset.

## VI. Procurement of Breach of Contract

The final issue is whether the trial court erred in failing to award damages for procurement of breach of contract under Tenn.Code Ann. § 47–50–109, which provides as follows:

> It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

The trial court correctly held that there were no existent contracts of which Mr. Moody could have induced or procured a breach:

> The plaintiff also asserts that the defendants are liable to the plaintiff for treble damages by reason of having induced the plaintiff's clients to breach their contracts with the plaintiff. However, there was no evidence of any breach by anyone. None of the plaintiff's clients were under contract with the plaintiff whereby they were required to use the plaintiff exclusively for any set term. The plaintiff's agreements with its clients or customers were simply rate agreements for indefinite terms.

The evidence preponderates in favor of the court's judgment that Tenn.Code Ann. § 47–50–109 is inapplicable to the present case. This issue is without merit.

## VII. Conclusion

For the aforementioned reasons, the judgment of the trial court holding Mr.

Moody personally liable for breach of the agreement signed in his corporate capacity is reversed. The remainder of the trial court's judgment is affirmed, and the case is remanded for a determination of the amount of damages for which Mr. Moody is personally liable under his individual employee agreement, consistent with this opinion. Costs on appeal are assessed to the Appellants, Tom Moody and SACCA Corporation.