IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 14, 2005 Session

## JOHN DOLLE, ET AL. v. MARVIN FISHER, ET AL.

Appeal from the Circuit Court for Sevier County
No. 2002-787-IV      O. Duane Slone, Judge

Filed August 26, 2005

No. E2003-02356-COA-R3-CV

John and Christina Dolle ("Plaintiffs") entered into a contract with Fisher Builders, Inc., for the construction of a single family residence. Plaintiffs eventually obtained a judgment against Fisher Builders, Inc., for breach of contract and breach of warranty. Plaintiffs' judgment against Fishers Builders, Inc. was for $61,102, plus interest and costs. After the judgment against Fisher Builders, Inc., became final, Plaintiffs filed this lawsuit against Marvin Fisher, the president, secretary, sole director, and sole stockholder of Fisher Builders, Inc. Plaintiffs claimed, *inter alia*, that Fisher Builders, Inc., was a sham corporation, the corporate veil should be pierced, and Fisher should be held personally liable for the judgment against his corporation. The Trial Court agreed and entered a judgment against Fisher personally. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
Circuit Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and SHARON G. LEE, JJ., joined.

Ross Brent Gray, Sevierville, Tennessee, for the Appellant Marvin Fisher.

Steven E. Marshall, Sevierville, Tennessee, for the Appellees John Dolle and Christina Dolle.

# OPINION

## Background

In July of 1999, Plaintiffs entered into a contract with Fisher Builders, Inc., for the construction by it of a single family residence in Sevier County, Tennessee. The following year, Fisher Builders, Inc., sued Plaintiffs alleging breach of contract. Plaintiffs filed a counterclaim alleging breach of contract and breach of warranty. Following a trial, Plaintiffs were awarded a judgment against Fisher Builders, Inc., for $61,102, plus interest and court costs. No appeal was taken from that judgment which became final after thirty days.

In November of 2002, Plaintiffs filed the present lawsuit against Marvin Fisher ("Fisher") seeking to have Fisher held personally liable for the Plaintiffs' judgment against Fisher Builders, Inc.[1] Plaintiffs claimed, among other things, that Fisher Builders, Inc., was a sham corporation, that Fisher failed to adequately capitalize the corporation and had diverted assets from the corporation, and that Fisher failed to observe the proper corporate formalities. Plaintiffs asked the Trial Court to pierce the corporate veil and hold Fisher personally liable for their outstanding judgment against Fisher Builders, Inc. Fisher answered the lawsuit and generally denied the pertinent allegations contained therein.

Fisher was the only witness to testify at trial. Fisher testified that he filed a charter for incorporation with the Secretary of State in July of 1999. Fisher was the president, secretary, and registered agent for Fisher Builders, Inc. ("Fisher Builders, Inc." or "the Corporation"). The Corporation's principal address was Fisher's home in Sevierville, Tennessee. Fisher was the sole stockholder and sole director of the Corporation. According to Fisher, the purpose of the Corporation was "to bill, to negotiate and sign contracts, enter into business contracts, [and] borrow monies for general construction purposes." Fisher was not a licensed contractor in Tennessee when the Corporation was created. In fact, neither Fisher, his wife, nor anyone connected with the Corporation ever was a licensed contractor. Nevertheless, Fisher Builders, Inc., entered into a construction contract to build Plaintiffs' home for a contract price of $216,187.

Fisher testified that he allowed Fisher Builders, Inc., to be dissolved because of the judgment against the Corporation obtained by Plaintiffs in the related lawsuit. According to Fisher, "I had to have a corporation that could work and that one was in litigation so I just let it die" because of the judgment against it. Fisher made the decision to let the Corporation "die" in his capacity as president and director of the Corporation. Fisher closed the Corporation's bank account around the time Plaintiffs obtained their judgment against the Corporation. Fisher formed another corporation, Fico Building and Investments, Inc., as soon as he let Fisher Builders, Inc., "die."

---

[1] Plaintiffs filed the present lawsuit against Marvin Fisher and his wife, Carolyn. The Trial Court refused to enter a judgment against Carolyn Fisher and that decision is not at issue on appeal. For ease of reference only, we will refer to Marvin Fisher as if he were the sole defendant in this litigation.

The initial deposit into the Corporation's bank account was $100. According to Fisher, when the Corporation was formed, the State of Tennessee authorized one hundred shares of stock. Fisher did not actually fill out the stock certificate to "verify" that he owned the stock until about one month before trial and well after the Corporation was defunct. Fisher also "compiled" the corporate minutes only about a month before trial. Fisher stated that he and his wife had "a lot of stuff that we just kept loose and then I just finally put it in the [minute] book so I'd have a complete book." Fisher acknowledged that "original minutes" never were kept. Fisher did not have any minutes from the Corporation's organizational meeting other than what he "summarized" in the minute book one month before trial.

Fisher acknowledged that he made all of the decisions for the Corporation. The Corporation never owned any assets such as land or vehicles or the like. Fisher actually owned the vehicles used by the Corporation, although deductions for depreciation were taken on the Corporation's income tax returns. Fisher stated he leased the vehicles "in a sort of way" to the Corporation so the Corporation could pay some of the expenses, although there were no actual written leases. Fisher acknowledged that a check for $4,000 was written from the Corporation's account and deposited into the account of a company owned by Fisher's wife. Fisher claimed the check was to pay back a loan from his wife to the Corporation although, once again, there was no written documentation evidencing this alleged loan. Other checks from the Corporation's account were written to "cash," including checks for as much as $5,000 and $6,800.

Fisher's medical and dental bills were paid by the Corporation. According to Fisher, "in my bylaws and stuff there is an explanation that the president will have his medical bills and doctor bills paid by the corporation."[2] Fisher also stated that he "might" have paid for some of his wife's medical bills out of the Corporation's account, but he was uncertain if his dog's veterinarian bills were paid out of that account. Fisher also paid personal income taxes out of the Corporation's account, which he stated was "part of my benefits of being a president.… [because] I didn't take a salary." Although he did not receive a regular monthly salary, Fisher stated that he "got paid when there was some dividends maybe from a job or something." When questioned whether the Corporation's money was used toward improvements to Fisher's house, such as garage doors, Fisher responded that he could not recall but that "may" have occurred.

Fisher acknowledged that a 1995 van was paid for using $10,900 from the Corporation's account. This van, however, was titled in Fisher's name. When asked the obvious question of whether the Corporation expended money on his personal behalf, Fisher responded that "could be." Fisher also made donations to his church out of Corporation funds. The attorney who represented the Corporation in the lawsuit filed by Plaintiffs against it also represents Fisher in this lawsuit.

---

[2] The Corporation's bylaws were admitted as Exhibit 6 at trial. The bylaws make absolutely no mention whatsoever of payment of the president's medical and dental bills. Fisher acknowledged that Exhibit 6 contained the "entire bylaws." Apparently the payment of Fisher's medical and dental bills were provided for in the other "stuff" Fisher referred to at trial.

After Fisher's testimony was completed and closing arguments were concluded, the Trial Court announced its decision from the bench. The Trial Court began by noting that there is a presumption that a corporation is a distinct entity separate from its shareholders, officers and directors. However, the Trial Court went on to add that:

> [I]n an appropriate case and in the furtherance of the ends of justice, a separate entity of a corporation may be disregarded and the individual owning its stock and assets will be treated identical to the corporation.
>
> Each case must rest on its special facts, and while … various factors … are relevant, there's no one factor that is conclusive in making a determination whether or not the corporate veil should be pierced.…
>
> The Court finds that in reality, in fact, that the entity known as Fischer (sic) Builders, Incorporated was for all intents and purposes treated as and used for the personal purposes of Mr. and Mrs. Fischer (sic). They used it to write the bills.… He says it was part of his income package to pay for his medical bills, but there's one $5,000 check and another [$5,900] check for an automobile that was his personally. The records are replete with monies being taken out of the corporation and used for personal benefit. The checking account of the corporation was used for personal everyday living for [the Fisher's].… You're still required to maintain a distinctness between the monies going in and the monies going out .… [I]n this corporation, the monies that were coming in were paid out just as if it was a personal checking account on behalf of [the Fishers.]

The Trial Court also concluded that Fisher failed to adhere to any of the appropriate corporate formalities. The Trial Court specifically found that there was nothing even to indicate the Corporation was being operated as a corporation other than the mere fact that the construction contract with Plaintiffs was signed by Fisher as the Corporation's president. Based on these findings, the Trial Court entered a judgment against Fisher personally.

Fisher appeals raising three issues. First, Fisher claims the present lawsuit is barred by the doctrine of res judicata. Second, Fisher claims the Trial Court's judgment should be reversed because it did not provide the specific dollar amount of the judgment being entered against Fisher personally. Finally, Fisher claims the Trial Court applied the wrong legal standard when it pierced the corporate veil and held him personally liable.

**Discussion**

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

With regard to the first issue, we note that Fisher never raised in his answer or otherwise any affirmative defense that the present claim was barred by the doctrine of res judicata. This affirmative defense was raised for the first time on appeal. "[R]es judicata is an *affirmative defense* which must be plead *specially*." *Usrey v. Lewis*, 553 S.W.2d 612, 614 (Tenn. Ct. App. 1977)(emphasis in original). Furthermore, it "is well-settled that issues not raised at trial may not be raised for the first time on appeal." *Dept. of Human Servs. v. Defriece*, 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996) (citations omitted). Therefore, we consider this issue to be waived.

With regard to the second issue, the Trial Court unfortunately failed to specify the amount of the judgment being entered against Fisher. However, following the trial and entry of judgment, Fisher filed with the Trial Court a Statement of Trial Court Proceedings because Fisher was unable at that time to obtain a copy of the transcript which was in the possession of Plaintiffs and their attorney. In any event, in this Statement of Trial Court Proceedings, Fisher acknowledged that Plaintiffs were awarded a judgment in the amount of $61,938.97. We assume this includes the original judgment of $61,102, plus the court costs. We believe the record is sufficiently clear that the judgment entered in this case is for the same amount as the judgment entered in the companion lawsuit against the Corporation. However, we agree that the Trial Court should have been more specific in its judgment. Accordingly, while the judgment in the present case is sufficiently definite for this appeal to proceed, on remand the Trial Court is instructed to modify the final judgment so as to specify the exact amount of that judgment.

The final issue is whether the Trial Court erred when it ultimately concluded that this was an appropriate case in which to pierce the corporate veil. These parties are in disagreement as to the appropriate legal principles to be applied when there is an attempt to pierce the corporate veil. In *Federal Deposit Ins. Corp. v. Allen*, 584 F. Supp. 386 (E.D. Tenn. 1984) the United States District Court for the Eastern District of Tennessee relied on various state and federal cases in crafting eleven factors to be considered when determining whether to pierce the corporate veil. These factors are:

> (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual

or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

*Id.* at 397.

The eleven factors discussed in *Allen* have been utilized or cited with approval by all three sections of this Court within the past nine months. In *Amanda Construction, Inc. v. White*, No. W2004-00521-COA-R3-CV, 2004 Tenn. App. LEXIS 818, at ** 6-7 (Tenn. Ct. App. Dec. 1, 2004), *no appl. perm. appeal filed*, the Western Section of this Court cited the eleven factors as those used by the courts of this state "when determining whether to pierce the corporate veil …." These same factors also were utilized by the Eastern Section of this Court in *Money & Tax Help, Inc. v. Moody*, No. E2004-00191-COA-R3-CV, 2005 Tenn. App. LEXIS 72 (Tenn. Ct. App. Feb. 3, 2005), *appl. perm. appeal pending*, and by the Middle Section of this Court in *Boles v. National Development Co., Inc.,* No. M2003-00971-COA-R3-CV, 2005 Tenn. App. LEXIS 247 (Tenn. Ct. App. Apr. 26, 2005), *appl. perm. appeal pending*. In addition, *Oceanics Schools, Inc. v. Barbour,* 112 S.W.3d 135 (Tenn. Ct. App. 2003) also discussed the *Allen* factors when we held that "[i]t is not necessary that all of these factors weigh in a plaintiff's favor in order to justify the piercing of the corporate veil." *Id.* at 140. Accordingly, until the Tennessee Supreme Court tells us differently, we will apply the eleven factors set forth above to determine if the Trial Court erred when it concluded that Defendant should be held personally liable for the judgment entered against Fisher Builders, Inc.

The issue of when an individual should be held liable for a corporate obligation is largely based upon factual determinations. *Boles,* 2005 Tenn. App. LEXIS 247, at * 39. Here, the evidence does not preponderate against the facts as found by the Trial Court. When applying the eleven factors, we must keep in mind that no single factor is conclusive and each case "must be decided on its own unique set of facts." *Amanda Construction, Inc.*, 2004 Tenn. App. LEXIS 818, at *7. In Tennessee, there is a "strong presumption" that a corporation is a separate legal entity independent from its officers, directors, and shareholders. *Amanda Construction, Inc.*, 2004 Tenn. App. LEXIS 818, at **6, 7. Accordingly, piercing the corporate veil is a principle to be applied with great caution. *Money & Tax Help, Inc.*, 2005 Tenn. App. LEXIS 72, at * 14.

It is obvious to this Court that the Trial Court correctly concluded that Fisher was using the Corporation as his personal checkbook. Of course, we have no way of knowing how much of the judgment the Corporation would have been able to pay had Fisher not used much of its assets to pay for his and his wife's personal expenses. We also agree with the Trial Court that Fisher failed to observe the appropriate corporate formalities.

It is neither necessary nor beneficial to yet again discuss the specific facts of this case other than to state that after reviewing the various factors set forth above in light of Fisher's testimony and all the relevant facts, we easily and quickly conclude, as did the Trial Court, that this was an appropriate case in which to pierce the corporate veil. The evidence is overwhelming that the Corporation was not a separate and distinct entity but instead simply functioned as Fisher's private bank account which he utilized as he wished. There never even existed the pretense that the Corporation was a separate entity apart from Fisher until it came time to raise the corporate existence as a shield. The judgment of the Trial Court holding Fisher personally liable for the full amount of the judgment awarded to Plaintiffs against Fisher Builders, Inc., is affirmed.

### **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for further proceedings as necessary and consistent with this Opinion and for the collection of the costs below. Costs on appeal are assessed against the Appellant, Marvin Fisher, and his surety.

_____
D. MICHAEL SWINEY, JUDGE