IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 7, 2010 Session

## CLAIBORNE HAULING, LLC v. WISTERIA PARK, LLC

**Appeal from the Chancery Court for Knox County**
**No. 170952-2      Daryl R. Fansler, Chancellor**

---

**No. E2009-02667-COA-R3-CV - AUGUST 16, 2010**

---

Claiborne Hauling, LLC, contracted with Wisteria Park, LLC, to perform the excavating and grading, including installation of storm sewers and sanitary sewers, for a residential subdivision Wisteria was developing. The contract calls for Claiborne Hauling to commence work on November 6, 2006, with a substantial completion date of April 5, 2007. The contract further provides that Claiborne Hauling will receive a bonus of $500 per day for early completion but will pay a $500 per day "penalty" if completion extends past May 31, 2007. Claiborne did not finish by May 31, 2007. Wisteria "fired" Claiborne Hauling during a heated exchange in August 2007, and confirmed termination of the contract in a letter from counsel. The ground stated for termination is failure to complete the project by May 31, 2007. However, Wisteria did not secure approval of its plans for construction of the sewer system until June 8, 2007. When Wisteria did not pay the invoices and change orders outstanding at the time of the termination, Claiborne Hauling first sent a "prompt pay notice" and then filed this action alleging breach of contract against Wisteria. Wisteria answered and filed a counterclaim asserting, among other things, that it was entitled to recover $500 per day from May 31, 2007, until substantial completion, as liquidated damages. After a bench trial, the court found that Wisteria was guilty of the first material breach and awarded Claiborne Hauling a judgment in the amount of $301,430.62, which included attorney fees under the Prompt Pay Act, Tenn. Code Ann. § 66-34-602 (2004). Wisteria appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

W. Tyler Chastain and Margo J. Maxwell, Knoxville, Tennessee, for the appellant, Wisteria Park, LLC.

Garrett P. Swartwood, Knoxville, Tennessee, for the appellee, Claiborne Hauling, LLC.

**OPINION**

I.

The contract between the parties is dated November 6, 2006. In the contract Claiborne Hauling undertakes to do site preparation for the subdivision per the furnished plans "in the listed scope of work for a lump sum of $1,077,488.00." The listed scope of work is limited to soil erosion control, clearing and grubbing, earthwork, storm sewer system, sanitary sewer system, water system, and mobilization. "Any work not listed" is excluded from Claiborne Hauling's scope of work. The contract specifically excludes, from Claiborne Hauling's responsibility, rock excavation, fees or permits, utility relocation, dewatering, and unsuitable soil removal. With regard to rock excavation and unsuitable soil the contract includes a unit price and provides

> These additional quantities would be submitted along with an engineering letter verifying such qualities & quantities. These charges would be paid as an extra/change order to the lump sum/draw submitted for this contract agreement.

(Capitalization in original omitted.) The contract sets a commencement and completion date in the following terms:

> Date of commencement to be November 6, 2006 with a substantial completion date of April 5, 2007, if in fact the contractor listed would complete scope of work shown before April 5, 2007 a $500.00 per day fee would be paid from the owner to such contractor for early completion. Paving and/or utilities not listed would not be a part of this restriction and in return if in fact completion date extends past May 31, 2007 exclusions again being utilities not listed or the paving process a $500.00 per day penalty fee could be assessed to the final payment owed for such work.

Claiborne Hauling's draws are subject to a 10% retainage, with the retainage being "due upon completion."

It is undisputed in this case that Claiborne Hauling could not, as a practical matter, commence work on the sanitary sewer until Wisteria obtained approval of its plans from West Knox Utility District ("WKUD") and the Tennessee Department of Environmental and Conservation ("TDEC"). It is further undisputed that WKUD did not approve the plans until May 17, 2007, and TDEC did not approve the plans until June 8, 2007. Also, there is no dispute in this case that Wisteria , and not Claiborne Hauling, had the duty to obtain approval of the sewer plans for its development. Todd Claiborne, the general manager for Claiborne Hauling, testified that he was ready to begin work on the sanitary sewer in January 2007, and so informed Wisteria. He further testified that he slowed his work on other phases of the project, even to the point of eliminating one crew, because of the delay in the approval of the sewer plans. Thus, it is Claiborne Hauling's position that the delay in completion was because of Wisteria's failure to secure approval of the sewer plans. Wisteria, on the other hand, claims that Claiborne Hauling was so far behind in other phases of the project, including the roads, that the delay in securing the plans had no impact.

Claiborne Hauling commenced work in November 2006, at about the same time the contract was signed. Because of the terrain of the land, including its proximity to a stream, Claiborne Hauling soon encountered soils that were unsuitable for the compaction needed for a road. Claiborne verified the presence and amount of the unsuitable soils through an independent engineering firm, S & ME, and submitted a change order. The change order was approved and paid. Work progressed in much the same manner from November 2006, through the April completion date, until August 2007. Mr. Chip Leonard, one of the owners of Wisteria who monitored the project, testified that even though he was not satisfied that progress on the project was in line with the schedule or the claims made by Claiborne Hauling for draws, he would "sometimes . . . let things go just so we didn't have conflict and so we didn't stall the project, just to keep everybody motivated and going." He made the deliberate choice not to "rock the boat." The other principal in Wisteria, Mr. David Dalton, testified that he and Chip Leonard discussed the delay in completion and decided that, knowing "we started getting into May and we knew we were nowhere close to being finished[,] . . . we wanted to give Claiborne Hauling every opportunity to get the project finished." They decided that such an approach "was in our best interest."

There is no doubt that by early May 2007, Claiborne Hauling was ready to start on the sanitary sewer lines and that it notified Wisteria of its need for approved plans.[1] Wisteria then secured the approval of both WKUD and TDEC by June 8, 2007. In an effort to expedite completion of the project, Claiborne Hauling contracted with Robby Giles to install the sanitary sewer. Giles was to use his own crew and oversee installation of one of

---

[1]As we have indicated, there is a dispute in the testimony concerning whether Claiborne Hauling was ready to start work on the sewer in January or February 2007 and so notified Wisteria.

Claiborne Hauling's crews. Giles encountered solid bedrock at approximately 3 to 4 feet along much of the length of the sewer line. Also, water flooded the ditches from both surface runoff and underground springs. These problems necessitated change orders. Again, S & ME verified the presence of the rock and the wet conditions.

Chris Etters of Claiborne Hauling presented numerous change orders to Chip Leonard of Wisteria at Leonard's office on August 21, 2007. Leonard objected to only one of the change orders. That particular change order involved a charge of $560 per day for two dewatering pumps. Leonard viewed the charge as excessive. During the discussion, Leonard inquired of Etters when Claiborne Hauling was going to start deducting the $500 per day penalty provided in the contract from its invoices. Etters insisted that Claiborne had been very fair with Wisteria with regard to change orders and that, if Wisteria really wanted to "go there," referring to the penalty clause, he, Etters, could "paper the walls" with change orders. Leonard ordered Etters out of his office, instructing Etters to not let the "door hit you in the ass" on his way out. Leonard also told Etters that he was terminating the contract because of Claiborne Hauling's delay in completing the work. In a letter dated August 28, 2007, Wisteria confirmed the termination. The letter states, in pertinent part:

> Pursuant to the terms of such contract, Claiborne Hauling was to achieve substantial completion of its obligations set forth in the contract on or before April 5, 2007. Claiborne Hauling failed to achieve substantial completion on or before April 5, 2007, and so is in default under the terms of the contract. If substantial completion was not achieved by that date, Claiborne Hauling is subject to a penalty of $500 per day until the work is completed.
>
> This is to advise you as a result of the default by Claiborne Hauling under the terms of the contract, Wisteria Park hereby terminates the contract effective immediately. Claiborne Hauling should immediately cease working at the Wisteria Park site.

At the time of the termination, the sanitary sewer was nearing completion. It had not received final testing and approval by WKUD. The testing and correction work was completed by Bob Sayne Construction Company, Inc.. Sayne also installed the water line on the project. Other than purchasing the materials for the water line, and performing a bore under the road, Claiborne Hauling had not done anything toward installing the water line. Representatives of Claiborne Hauling testified at trial that the materials and the road bore

represented 45% completion of the water line aspect of the contract. Claiborne Hauling's scope of work was substantially complete no later than April 28, 2008.

In a letter misdated "August 27, 2002" Claiborne Hauling gave notice to Wisteria that

> Wisteria Park has failed to pay for the work and materials furnished by Claiborne Hauling in the total amount of $239,456.41. Please be advised that Wisteria Park's failure to make payment is in violation of the Tennessee Prompt Pay Act, Tenn. Code Ann. § 66-34-101, et seq. Unless you make payment or provide us a response giving adequate legal reasons for your failure to make payment within ten (10) calendar days from your receipt of this letter, Claiborne Hauling will proceed to enforce its rights under the Tennessee Prompt Pay Act, which may include . . . the recovery of . . . attorney fees.

Wisteria responded within 10 days by letter dated October 23, 2007, in which it pointed out the error in the date of Claiborne Hauling's notice and stated that Claiborne Hauling was in default because "Claiborne Hauling failed to achieve substantial completion of its obligations set forth in the contract on or before April 5, 2007, and so is in default under the terms of the contract."

After hearing the proof, the court took the matter under advisement pending argument and receipt of the proposed findings of fact and conclusions of law from the parties. The court announced its findings in a transcribed opinion, the pertinent parts of which are as follows:

> The court finds that the contract between Wisteria and Claiborne was not a time is of the essence contract. In Tennessee, in order for time to be an essential term of a contract, the contract must make an expressed stipulation and manifestation of the intention from the contractor's subject matter involved or an implication from the nature of the contract or circumstances of the case. The analysis should focus on the entire agreement together with the circumstances of the part[ies] and the subject matter.

> Generally, time is not of the essence in building or construction contract[s]. This is because performance is often delayed by the

complexities of performance and the contingencies of external factors such as the weather.

The contract between Wisteria and Claiborne does not expressly state that time is of the essence other than discussions between the parties about the likely date of completion and instances where defendant urged plaintiff to work as quickly as possible.

There is no evidence that Wisteria attempted to make the contract a time of the essence contract. There is testimony from both sides that Claiborne continued working on the project in constant communication with Wisteria until the time that Claiborne was formally fired via a letter from Wisteria's attorney at the end of August 2007, more than four months after the date of substantial completion projected in the contract.

There is testimony that long after the agreed date of substantial completion had passed, Robert Giles furnished a schedule of completion to Wisteria, which schedule estimated completion of the sewer system by the end of August and completion of the water system by the beginning of October. Wisteria did not object to the schedule of completion.

\* \* \*

Thus, even if this contract had had a time is of the essence provision, it is clear by acknowledging that plaintiff would not complete the work by the expected date and yet encouraging him to complete it, Wisteria waived the right to enforce under the time is of the essence doctrine.

\* \* \*

To the extent that Wisteria's termination of the contract was based upon a timely – a failure to timely complete the project, then that termination was unreasonable and amounts to a material breach of the contract.

\* \* \*

-6-

In this case, although Mr. Leonard testified as to his dissatisfaction with the plaintiff's work prior to August of 2007, there is a total absence of proof to substantiate his claims. Everyone acknowledges that there were certain areas in the roadway that were wet areas that required considerable cut and fill operations to try to get dry soil – compactible soil into those areas.

However, there is no evidence in this case – no evidence presented that what the plaintiff did was in an unworkmanlike manner.

*   *   *

It is undisputed that the developer, Wisteria, did not provide Claiborne's crew a reasonable opportunity to perform and did not give Claiborne notice before unilaterally terminating the contract and hiring another contractor to finish the job.

*   *   *

. . . Other than complaining of delay and change orders, Wisteria offers insufficient evidence to support its decision to unilaterally terminate the contract and force the plaintiff from the job site. And thus again, Wisteria was the first to breach.

Accordingly, the court awards damages as set forth in paragraph 17 of the plaintiff's proposed conclusions of law. However, from that amount of $276,303.11, there must be deducted $16,160, representing the cost of the 60-inch pipe and headwalls.

*   *   *

Now, the defendant in the case has offered a number of witnesses that have testified as to the expenses incurred by the defendant in completing the project and making repairs.

The court has a great deal of difficulty with the proof offered by the defendant in the case, however. Mr. Sayne was called to

testify. And when cross-examined by plaintiff's counsel as to a specific charge for certain repairs or certain work done, Mr. Sayne was unable to give even a reasonable estimate as to the portion of his charges that reflected repairs or the completion of redoing work that Claiborne would have had to do had it remained on the job.

In one instance, Mr. Leonard, the – one of the principals in Wisteria Park, testified that they had to hire Baker Construction Services to come out and essentially grind up all the wood and other debris that was left by Claiborne and dispose of it.

However, when Robert – or when Bart Devore with Baker Construction Services – and he is their vice president and project manager. When he was called to testify, he testified that he cleared lots, which was not part of the Claiborne contract, and that most of the grinding operations that he did on site had to do with the work that he performed. And his number was 95 percent of the work that he performed was what Baker had quote, knocked down from the lot site.

He further stated that the only logs or other wood that he ground up were near the entrance to the subdivision and this was logs that he stated looked like they had ben left for timber.

So, aside from the fact that we have problems with the contractors who came in subsequent to Claiborne being able to specifically identify any amounts for – necessary and reasonable amounts for repairs or adjustments to the systems, we have credibility problems from the defendant.

The court concludes that Mr. Leonard in a rather heated manner unilaterally terminated this contract and proceeded with the expectation that he could spend whatever he wanted and recover it from the plaintiff.

As noted, the court finds Wisteria was the first to materially breach this contract and they are not entitled to damages and further, they never gave Claiborne the opportunity to cure the defects and, therefore, cannot recover for any repairs.

By the same token, Claiborne has not proved what the net profits would have been had – had they been allowed to complete these repairs.

* * *

So the court awards judgment for the plaintiff in the amount of – it's going to be $276,303.11 less $39,002.98 in los[t] profits and less $16,160 for the pipes and headwalls. So if you will prepare a judgment.

* * *

I'm going to award the attorneys fees in this case. . . .

* * *

. . . Mr. Leonard's testimony is couched in the – and the claim that he was dissatisfied with Claiborne's work all along and that somehow after August when there was a dispute about the – about the – about the change order, that – that somehow he would have realized that he had been dissatisfied all along with the work. And there is just no evidence to support that.

* * *

I mean, the circumstantial evidence is that there was only one change order in dispute when Mr. Etters and Mr. Leonard had this blowup. That was the deal with the pumps.

* * *

So I've got a bad-faith refusal on part of it, but I can't find a bad-faith refusal to pay on the other part. And quite frankly, I'm not sure what we do in a circumstance like that.

The bad-faith refusal is what necessitated the whole case anyway, so I mean, I'm going to award the fees. There was a –

at least a bad-faith refusal to pay a part of the charges that were due so I'm going to award the attorneys fees.

The court incorporated the above memorandum opinion into its judgment in favor of Claiborne Hauling. The attorney's fees were set at $46,006.54. Wisteria filed this timely appeal.

II.

Wisteria raises the following issues in this appeal:

Whether the Trial Court erred in finding that time was not of the essence in regards to the Construction Contract dated November 6, 2006.

Whether the Trial Court erred in its finding that [Wisteria], as opposed to [Claiborne Hauling], committed a first material breach of the Construction Contract.

Whether the Trial Court erred in finding that [Claiborne Hauling] was entitled to recover attorney's fees under the Tennessee Prompt Pay Act, Tenn. Code Ann. § 66-34-602.

Whether the Trial Court erred in calculating and awarding damages.

III.

The trial court's factual findings are reviewed *de novo*, but are accorded a presumption that they are correct unless the evidence preponderates against those factual findings. Tenn. R. App. P. 13(d); ***Money & Tax Help, Inc. v. Moody***, 180 S.W.3d 561, 565 (Tenn. Ct. App. 2005). The trial court's conclusions of law are accorded no such presumption. ***Id***. The interpretation of a contract is a question of law. ***Barnes v. Barnes***, 193 S.W.3d 495, 498 (Tenn. 2006). However, the determination of whether a breach has occurred is a question of fact. ***Carter v. Krueger***, 916 S.W.2d 932, 934-35 (Tenn. Ct. App. 1995)("This is a matter of fact which is properly addressed to the trier of fact.") The determination of the proper measure of damages is a question of law, but "the amount of damages to be awarded in a particular case is essentially a fact question." ***Beaty v. McGraw***, 15 S.W.3d 819, 827 (Tenn. Ct. App. 1998).

-10-

IV.

Wisteria argues that the bonus and penalty clause in the contract, which imposes a $500 per day penalty after May 31, 2007, makes "time of the essence" and put Claiborne Hauling in material breach so as to justify Wisteria's termination of the contract in August. There are at least three reasons why this argument fails. First, the express language of the contract does not support a finding that time was of the essence. Failure to complete a construction project by a specified date will not constitute a material breach absent a provision making time of the essence. *Shepherd v. Perkins Builders*, 968 S.W.2d 832, 833 (Tenn. Ct. App. 1997). We are to consider the entire agreement in the context of the circumstances and the subject matter in deciding whether the failure to complete the project on April 5, 2007, put Claiborne Hauling in material incurable breach. *Id*. We need not look beyond the express language to see that Claiborne Hauling was not in automatic and material breach for failure to complete performance by April 5. In fact, the penalty phase did not even start under the language in the contract until May 31, 2007, nearly 60 days after the target substantial completion date. More importantly, the inclusion of the penalty language implies that delay past May 31, 2007, is not a material breach which will preclude Claiborne Hauling's right to finish the project, but is a factor which will impact Wisteria enough financially to change the ultimate payout.

Second, it is clear that Wisteria's failure to secure approval of its plans made it impossible for Claiborne Hauling to complete the project by the substantial completion date, or even the penalty phase date. *See Groner v. On-Site Grading, Inc*, No E1999-00219-COA-R3-CV, 2000 WL 502843 at *4 (Tenn. Ct. App. E.S., filed April 28, 2000). Wisteria devotes much effort to persuading us that Claiborne Hauling did not let Wisteria know that it needed the approved plans before May 2007. The bottom line is that Wisteria knew all along that it was Wisteria's duty, and not Claiborne Hauling's, to secure approved plans and it did not. It avails Wisteria nothing to argue that Claiborne Hauling should have reminded them or prodded them of their duty or have contemplated at the time of signing the contract that Wisteria would not timely secure the plans. This is especially true given that Claiborne Hauling's "site preparation" was to be "per the plans furnished." At the very least, Claiborne Hauling was entitled to a reasonable time to perform past June 8, 2007, when it was "furnished [approved] plans."

Third, it is abundantly clear that the trial court was correct in holding that Wisteria waived the deadline, even if it had been a strict "time is of the essence" deadline. The court framed its findings in terms of the rule that "an owner , knowing construction will not be completed before the deadline, who allows the contractor to continue working after the deadline and encourages the contractor to finish the job, waives his right to terminate under a 'time is of the essence' provision." *Madden Phillips Construction, Inc. V. GGAT*

***Development Corp.***, No. W2008-02350-COA-R3-CV, 2009 WL 3064898 at *14 (Tenn. Ct. App. W.S., filed September 25, 2009), *see **Shepherd***, 968 S.W.2d at 833. The evidence does not preponderate against the trial court's finding that all the elements of waiver were present in this case.

Wisteria's argument that Claiborne Hauling committed the first material breach of the contract is premised almost entirely upon its argument that time was of the essence and that Claiborne Hauling was in breach when it did not complete the project on April 5, 2007. We will not retrace our steps in this regard. Wisteria makes the imaginative argument that even if Claiborne Hauling was not in breach for failing to complete its work by April 5, 2007, it was in material breach for rejecting Mr. Leonard's suggestion that it should start allowing Wisteria a credit of $500 per day. Wisteria argues that Claiborne Hauling's refusal to acquiesce in the penalty was an anticipatory repudiation. We disagree. We first note that the letter from counsel formally terminating the contract did not mention failure to acquiesce in the penalty as a breach. It cited only the failure to finish the job by April 5, 2007. The same is true with the letter responding to Claiborne Hauling's Prompt Pay notice; it mentioned only the failure to finish the job by April 5, 2007, as a breach. The "anticipatory repudiation" argument is thus only an imaginative afterthought. The trial court did not make an explicit finding of fact that directly addressed this argument, so we will make our own finding. *See **Kesterson v. Varner***, 172 S.W.3d 556, 566 (Tenn. Ct. App. 2005). The preponderance of the evidence is that even after the confrontation between Etters and Leonard, Claiborne Hauling wanted to continue work and tried to contact the principals of Wisteria, but they would not be contacted. Based on the record as a whole, which we have reviewed in its entirety, it is more likely than not that had Wisteria been willing to meet and discuss the situation, rather than stand on Mr. Leonard's hasty decision to terminate the contract, the parties would have found some way to escrow the penalty funds or resolve the issue at the completion of the project. Also, Claiborne Hauling correctly points out that the express terms of the contract only allow the penalty to be "a[ss]essed to the final payment owed for such work." We accordingly hold that there was no error in the trial court's determination that Wisteria, and not Claiborne Hauling, was guilty of the first material breach of the contract.

We move now to the issue of whether the trial court erred in awarding attorney's fees to Claiborne Hauling under the Tennessee Prompt Pay Act, Tenn. Code Ann. § 66-34-101, et seq. (2004 and Supp. 2009). Specifically, the Act applies to contract disputes, and, subject to certain other conditions, "[r]easonable attorney's fees may be awarded against the nonprevailing party; provided, that such nonprevailing party has acted in bad faith." Tenn. Code Ann. § 66-34-602(b) (2004). Wisteria argues this case involves, at most, a good faith dispute. Wisteria contends that "[t]here can be no finding of 'bad faith' under the Act if the nonpaying party 'honestly believes that their company does not owe the money claimed,'" relying on a quote from ***Trinity Industries v. McKinnon Bridge Co.***, 77 S.W.3d 159, 181

(Tenn. 2001). We cannot agree that Wisteria could have honestly believed it owed Claiborne Hauling nothing on the pending invoices, retainage, and change orders. As the trial court found, the only change order that Wisteria even made a colorable argument against was the one change order for dewatering which charged $280 per day per pump, for two pumps, including labor and fuel. Leonard made vague accusations in his direct examination of multiple change orders for undercutting the same soil, but when challenged on cross examination, he could not identify a duplicative change order. In fact, he testified that once he enlightened Claiborne Hauling on how to "crown" the road surface, the situation improved and no further undercutting was needed. Todd Claiborne explained the basis for every change order and Wisteria offered nothing but accusation and innuendo to challenge the change orders. The argument that Claiborne Hauling did not secure Wisteria's approval of all the change orders is without merit; the contract does not require Wisteria's advance approval. In short, we have considered all of Wisteria's arguments with regard to the award of attorney fees and find them to be without merit. The evidence does not preponderate against the trial court's finding that Wisteria was acting in bad faith and that its bad faith refusal is what necessitated the litigation.

The final issue we must address is Wisteria's challenge to the amount of damages awarded. For the most part, this argument is based on the erroneous proposition that Claiborne Hauling owes a penalty of $168,000 for delaying completion after being the first to materially breach the contract. Wisteria also attempts to argue that since it paid other contractors to complete the project, it is entitled to recoup these payments. However, as the trial court found, Wisteria brought these expenses on itself by breaching the contract in firing Claiborne Hauling and not allowing it an opportunity to cure the alleged problems. Moreover, as the trial court also found, Wisteria was unable to tie its expenditures into Claiborne Hauling's scope of work. Thus, the evidence does not preponderate against the trial court's determination of the damages caused by Wisteria's breach.

V.

The judgment of the trial court is affirmed in all respects. Costs on appeal are taxed to Wisteria Park, LLC. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and for the collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE