IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 13, 2004 Session

## MATTHEW LAWSON, ET AL. v. EDGEWATER HOTELS, INC., ET AL.

Appeal from the Circuit Court for Sevier County
No. 2000-594-I     Ben W. Hooper, II, Judge

No. E2003-03093-COA-R3-CV  - FILED NOVEMBER 30, 2004

Matthew Lawson, by his mother and next friend, Shirley Lawson, and Ms. Lawson, individually (collectively "the plaintiffs") brought an action for negligence against Edgewater Hotels, Inc., and Stokely Hospitality Properties, Inc. (collectively "the defendants"), alleging that Matthew[1] sustained injuries as a consequence of swimming in the indoor pool at the defendants' hotel.  According to the plaintiffs, Matthew sustained these injuries (1) due to the excessive amount of chlorine in the pool water and/or (2) because the defendants failed to properly ventilate the indoor portion of the pool. The defendants moved for summary judgment.  The trial court granted the motion as to both of the plaintiffs' theories.  The plaintiffs appeal.  We affirm the trial court's judgment with respect to the plaintiffs' allegation that the defendants' pool contained excessive levels of chlorine.  However, we vacate the trial court's judgment with respect to the allegation that the defendants' indoor pool was not properly ventilated.  We hold that the defendants failed to meet their burden on summary judgment with respect to this claim.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Affirmed in Part; Vacated in Part; Case Remanded.

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and WILLIAM H. INMAN, SR.J., joined.

David A. Burkhalter, II, Knoxville, Tennessee, for the appellants, Matthew Lawson, by his mother and next friend, Shirley Lawson, and Shirley Lawson, individually.

David E. Long and Joshua A. Wolfe, Knoxville, Tennessee, for the appellees, Edgewater Hotels, Inc., and Stokely Hospitality Properties, Inc.

### OPINION

---

[1]For ease of reference, we will refer to Matthew Lawson and the other minor children involved in this matter by their first names.  We intend no disrespect.

I.

On August 6, 1999, Shirley Lawson arrived at the Edgewater Hotel in Gatlinburg for a vacation. She was accompanied by her sons, Matthew Lawson and Nicholas Lawson. The defendants owned the hotel. Ms. Lawson and her sons were scheduled to stay at the hotel through the morning of August 9, 1999. Her sisters, Melissa Deering and Deybra Munson, along with Ms. Deering's son, Jason, were to meet them at the hotel for the weekend.

Ms. Lawson arrived at the hotel sometime between 10:00 a.m. and 11:00 a.m on August 6, 1999.[2] As it was too early to check in, Ms. Lawson secured the permission of the front desk clerk for her sons to play in the pool until their room was ready. The pool is built so that part of the pool is outdoors and part is indoors. The two sections of the pool are separated by a glass partition. One can move between the two parts of the pool by swimming under the partition. The enclosed portion of the pool also includes two hot tubs and a waterfall. The waterfall draws water from the bottom of the pool.

When the Lawsons and the Deerings entered the indoor pool enclosure on August 6, 1999, they noticed a very strong smell of chlorine. They observed that the air was thick, stuffy and humid, and that what they believed to be chlorine fumes would "sort of burn your eyes." The glass doors and windows of the indoor enclosure were closed and had condensation on them. Ms. Lawson, Ms. Deering and their respective sons, Nicholas and Jason, spent the day at the outdoor portion of the pool. However, son Matthew swam in the indoor pool due to a skin condition that was aggravated by the sun. The airborne chlorine did not appear to bother Matthew's eyes. It should be noted, however, that he was wearing goggles while in the pool. Although Ms. Lawson and Ms. Deering remained outdoors for most of the day, Ms. Lawson would periodically check on Matthew.

The group remained at the pool from about 10:00 a.m. or 11:00 a.m. until approximately 6:00 p.m. After they left the pool to get ready for dinner, Matthew started to complain that his throat and head were hurting. The other boys were also complaining of burning eyes; they were also coughing. About three or four hours earlier, Ms. Lawson had noticed that Matthew was coughing, but she thought it was because he had swallowed some water. Since he appeared to be having a good time, she did not remove him from the pool. The plaintiffs went to dinner with Melissa Deering and her son. Matthew continued to cough, laid his head down on the table, and was unable to eat.

That evening, Matthew's symptoms worsened. He began to have difficulty breathing, experiencing chest pains and headaches, and gagging, although he never actually threw up. Ms. Lawson called Dr. Ellenburg, Matthew's doctor. Matthew had a pre-existing asthmatic condition and allergies that Dr. Ellenburg had been treating for some time. Based on the symptoms described by Ms. Lawson, Dr. Ellenburg told her that he believed Matthew was suffering from chlorine poisoning. He provided instructions as to how to best care for the boy. Ms. Lawson was very concerned, but did not take Matthew to the hospital due to the high level of traffic that weekend. Ms. Deering, however, went down to the front desk and asked that the local EMS be put on standby in case they

---

[2]Ms. Deering and her son Jason arrived later that day.

needed to get them there quickly. The front desk clerk allegedly informed her that an ambulance would be able to get to them and that EMS did not need to be put on standby.

The following morning, Matthew's symptoms had improved but he had not fully recovered. The group went down to the outdoor pool[3] so Nicholas and Jason could swim. Matthew attempted to go into the pool for a couple of minutes that afternoon, but was too tired and resumed sitting with his mother under the umbrella. Although the parties were scheduled to remain at the defendants' hotel until Monday, August 9, 1999, the parties decided to leave on Sunday, August 8, 1999, out of concern for Matthew's health. The hotel furnished a refund for Sunday night. When checking out, Ms. Lawson asked to speak to the manager on duty. According to Ms. Lawson, the manager on duty apologized and informed her that an employee had forgotten to turn on the ventilation system and open the windows.[4] The manager also allegedly explained that the heated whirlpool vapors and mist from the waterfall caused chlorine to be airborne and become concentrated in the air.

---

[3]The following morning, when Ms. Lawson walked through the indoor pool enclosure, she noticed that the water was clearer and that the chlorine odor had subsided.

[4]The position of weekend manager on duty was split between the hotel department heads. Although Ronald Davis was the chief engineer, he was the manager on duty that weekend. In his deposition, he testified that he investigated a complaint of excessive chlorination by conducting tests on August 7, 1999, all of which indicated that the pool chlorination was within normal limits. He also testified that when he tested the ventilation system the day *after* the incident, the system was working. Mr. Davis admitted having a conversation with Ms. Lawson, but he denied saying that the ventilation system had been turned off. The defendants have filed a motion in limine to exclude this testimony should the matter go to trial. We express no opinion as to the merits of the motion.

On August 4, 2000, the plaintiffs filed this action against the defendants. In their complaint[5], the plaintiffs averred that "the pool in which they were swimming had excessive levels of chlorine, and the pool lacked proper ventilation," and that these conditions arose from the defendants' negligence. As a result, the plaintiffs alleged the following injuries: that Matthew "incurred serious, painful and permanent damage to his respiratory system"; that he "has been compelled to endure great pain, and has been required to seek medical assistance"; and that Ms. Lawson "has been deprived of the services of her son, and has been compelled to expend large sums of money for medical services."

The defendants filed their motion for summary judgment on November 3, 2003. Following oral argument, the trial court granted the defendants' motion. In its opinion rendered from the bench, the trial court stated that it ultimately "[could not] get around the foreseeability issue." The trial court entered an order to this effect on December 23, 2003. From this order, the plaintiffs now appeal.

II.

Since our inquiry in reviewing a motion for summary judgment raises purely a question of law, we review the record, according no presumption of correctness to the trial court's judgment. We must decide anew whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Staples v. CBL & Assoc., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000). For summary judgment to be appropriate, Tenn. R. Civ. P. 56.04 requires (1) that there be no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, and (2) that the moving party is entitled to judgment as a matter of law. *Id.* It is incumbent upon the moving party to prove that its motion

---

[5]The plaintiffs filed a motion to amend their complaint on November 7, 2003. In it, they sought to allege that the defendants were guilty of negligence per se for violating the following Department of Health and Environment regulations pertaining to swimming pools:

> Rule 1200-23-1.04(1)(b) "Pool Enclosures. Ventilation must be sufficient to prevent condensation and odor accumulation."
>
> Rule 1200-23-1.04(3)(c)(i) and (ii): Regarding acceptable levels of chlorine in pools and spas.
>
> Rule 1200-23-1.04(3)(c)(5): Hand chlorination not acceptable except for emergencies, infrequent chlorination purposes, or as approved by the Department.

The plaintiffs further alleged that Matthew "sustained an exacerbation to a pre-existing condition" that will result in future hospital, doctor and drug expenses, and that he "sustained, and will continue to sustain, great pain of body and mind." The court entered an order December 23, 2003, allowing the motion. However, the trial court, in its order, also allowed defendants' motion to amend their answer. Since an automatic chlorination system manufactured by another entity was used to chlorinate the defendants' pool, and that same company furnished the chlorine sanitizing agent, the defendants specifically denied any negligence. The defendants further stated that although they contend that the pool was properly maintained at all times, any injuries to the plaintiffs were proximately caused by the automatic chlorination system and/or chlorine sanitizing agent, both of which were beyond the defendants' control. Defendants also pled comparative fault as an affirmative defense.

satisfies these requirements; if and when the moving party has met its burden, the burden shifts to the nonmoving party to set forth specific facts that establish the existence of a genuine issue of material fact that must be resolved by the trier of fact. *Id.* (citations omitted).

In supporting a motion for summary judgment, the moving party must do more than merely proffer "conclusory assertion[s] that the non-moving party has no evidence." ***McCarley v. West Quality Food Svc.***, 960 S.W.2d 585, 588 (Tenn. 1998) (quoting ***Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn. 1993)). Rather, the movant "must either *affirmatively negate an essential element of the non-movant's claim* or conclusively establish an affirmative defense." *Id.* (emphasis added). If the moving party fails to negate an essential element, the nonmoving party's burden of producing evidence of a material dispute of fact is not triggered. *Id.*

III.

In the instant case, the plaintiffs proceeded on two theories: (1) that the pool was over chlorinated, and (2) that the indoor pool was not properly ventilated. The defendants moved for summary judgment on both theories based on the following: (1) that the defendants properly maintained the swimming pool and the ventilation system, and, consequently, they "did not create or tolerate a dangerous condition on their property"; (2) that since Matthew's alleged injuries were not foreseeable, the defendants owed no duty to protect him from those alleged injuries; (3) that the plaintiffs could not proffer sufficient evidence to show causation; and (4) that even assuming there was a dangerous condition on August 6, 1999, the defendants had no knowledge of its existence prior to the injuries incurred. In support of its motion, the defendants submitted the affidavit of Ronald Davis, the chief engineer at the defendants' hotel; and excerpts from (a) the deposition of Lisa McMahan, an inspector with the Tennessee Department of Health, Division of General Environmental Health ("TDH"), who conducted regular checks of the defendants' pool, (b) the deposition of Shirley Lawson, and (c) the deposition of Bret Gautner, the general manager of the defendants' hotel.

As to the plaintiffs' first theory – that the pool contained excessive amounts of chlorine – we find that the defendants, as the moving party, satisfied their burden by proffering evidence negating the plaintiffs' claim. In support of their motion for summary judgment, the defendants proffered, among other evidence, an affidavit from Ronald Davis, the chief engineer of the defendants' hotel. Mr. Davis averred that the pool's chlorine and pH levels are checked by one of the hotel employees every morning, and that these levels are subsequently recorded by that employee. Mr. Davis was responsible for maintaining these records. On the day in question – August 6, 1999 – these records demonstrate that the chlorine level of the swimming pool was 3.0 parts per million (PPM) and the pH level was 7.6. The records further illustrate that at no time from June 28, 1999, to August 6, 1999, did the chlorine level exceed 3.0 PPM. To demonstrate that these levels were within the limits established by the TDH, the defendants referenced the deposition testimony of Lisa McMahan, an environmental specialist with the TDH, whose duties include conducting surprise inspections at the Edgewater Hotel. Her deposition testimony illustrates that 3.0 PPM is at the upper limit of the range contemplated by the regulations, but that it is an acceptable reading. Similarly, a pH of 7.6 falls within the acceptable range set forth by the regulations.

We hold that the evidence recited in the foregoing paragraph successfully negates an essential element of the plaintiffs' claim, *i.e.*, that the defendants' pool contained too much chlorine. The admissible facts presented by the defendants show that the pool did *not* contain excessive levels of chlorine. Consequently, the burden shifted to the plaintiffs to present admissible facts establishing a genuine issue of material fact as to plaintiffs' allegation of *breach* of duty on its theory of excessive chlorine in the pool. *See* **McCarley**, 960 S.W.2d at 588. The plaintiffs did not offer any evidence showing excessive levels of chlorine in the pool. Since the plaintiffs failed to controvert the defendants' submission, the facts before us establish that the chlorine in the pool was not excessive; therefore there is nothing for a trier of fact to determine as to the plaintiffs' first theory of recovery. It follows that the defendants are entitled to summary judgment as to the theory of excessive chlorine in the pool.

IV.

A.

With respect to the plaintiffs' claim that the defendants' pool was not properly ventilated, however, we find that the defendants did not successfully meet their burden of negating an essential element of the plaintiffs' claim of negligence.

B.

A successful negligence claim requires that a plaintiff establish each of the following elements *at trial*: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause. **McCall v. Wilder**, 913 S.W.2d 150, 153 (Tenn. 1995) (citations omitted). We will commence our discussion with the first element: the duty of care. Whether the plaintiff is owed a duty of care is a question of law to be determined by the court. **Coln v. City of Savannah**, 966 S.W.2d 34, 39 (Tenn. 1998) (citations omitted). This element requires consideration of "whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant." **Id.** (citations omitted).

A risk is unreasonable and imposes a duty to act with care if "the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm."[6] **McCall**, 913 S.W.2d at 153. Once a court finds that a duty of care is owed to the plaintiff – either a duty to refrain from creating a

---

[6]In assessing duty, the factors appropriate for the court's consideration are

> the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

**McCall**, 913 S.W.2d at 153.

dangerous condition or a duty to warn against such a condition – the court must determine "whether a defendant has conformed to the applicable standard of care, which is generally reasonable care under the circumstances." *Coln,* 966 S.W.2d at 39. Our Supreme Court has articulated the analysis to be employed in determining the scope of duty in an action for negligence:

> The term reasonable care must be given meaning in relation to the circumstances. Ordinary, or reasonable, care is to be estimated by the risk entailed through probable dangers attending the particular situation and is to be commensurate with the risk of injury. The risk involved is that which is foreseeable; a risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable. Foreseeability is the test of negligence. If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability. "[T]he plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that some action within the [defendant's] power more probably than not would have prevented the injury."

*Doe v. Linder Constr. Co.*, 845 S.W.2d 173, 178 (Tenn. 1992) (internal citations omitted).

In the instant case, the defendants contend that the injuries alleged by the plaintiffs were unforeseeable and, so the argument goes, they were under no obligation to undertake measures for maintaining their pool beyond those that were already in place. The defendants argue that the plaintiffs neglected to proffer any evidence that the ventilation system at the Edgewater Hotel's pool was not working on the day of the alleged injuries, and consequently there is nothing that the defendants could have done beyond their regular maintenance to reasonably foresee that this type of injury could occur. This argument, however, fails to recognize the defendants' burden in supporting a motion for summary judgment. It is not necessary that the *plaintiff* furnish sufficient evidence to allow the court to determine that the ventilation system was not working or that these injuries were foreseeable. Rather, it is incumbent upon the defendants at the summary judgment stage to demonstrate that the ventilation was, in fact, working on August 6, 1999. The defendants' argument assumes that they have proven that the ventilation system was on and, under those conditions, it is not foreseeable that Matthew would sustain such injuries. However, the defendants have made no such showing. The defendants failed to present evidence that Matthew's injuries were *not* a foreseeable consequence of a poorly ventilated indoor pool. For this reason, we hold that the duty element was not negated. It follows that the obligation of the plaintiffs to present evidence on this issue was not triggered. *See* **McCarley**, 960 S.W.2d at 588.

The defendants rely primarily on the case of ***Tompkins v. Annie's Nannies, Inc.***, 59 S.W.3d 669 (Tenn. Ct. App. 2000), for the proposition that an injury must be foreseeable for a duty to arise. This case is inapposite to the one now before us. In ***Tompkins***, we reviewed the trial court's grant

of a *directed verdict* where a plaintiff, whose knees were injured in a downhill race, failed to proffer evidence that her injury was foreseeable. *Id.* at 674. Although the evidence demonstrated that the plaintiff's injuries were caused by running down the hill, the trial court decided, and we agreed, that the defendant could not have reasonably foreseen that such a rare injury would have occurred when children under its care ran down a hill. *Id.*[7]

The issue before us is not the sufficiency of evidence *at trial*. In *Tompkins*, the plaintiff, *at trial*, had the burden of showing foreseeability. In the instant case, we are not dealing with a trial. We are dealing with summary judgment. On summary judgment, the *defendant* has the burden of showing a *lack* of foreseeability. This the defendants have not done. The defendants failed to *negate* the element of duty. As a consequence of this failure, the plaintiffs' burden to prove duty was not triggered. While they will have that burden at trial, they do not have it now.

C.

If a defendant does not exercise reasonable care, it breaches its duty to a plaintiff. *McCall*, 913 S.W.2d at 153. Although the owner or operator of premises is not the "absolute insurer" of the safety of its premises, it is required to use due care under all circumstances. *Eaton v. McLain*, 891 S.W.2d 587, 594 (Tenn. 1994). That includes removing or warning against any latent or hidden dangerous conditions of which the owner was aware or should be aware through ordinary diligence. *Coln*, 966 S.W.2d at 40. Therefore, before a premises owner can be held liable for a dangerous or defective condition on its premises, there must be evidence *at trial* that the condition was created by the owner or its agent, or, if created by another, that the owner had actual or constructive notice[8] of the condition prior to the alleged injury. *Chambliss v. Shoney's Inc.*, 742 S.W.2d 271, 273 (Tenn. Ct. App. 1987) (citation omitted). The defendants contend that since the plaintiffs presented no evidence to prove this element of its cause of action regarding lack of ventilation, summary judgment was appropriate on the plaintiffs' second theory of recovery.

The defendants have once again failed to grasp the parties' respective burdens on summary judgment. Whether the plaintiffs presented evidence that the ventilation system was not working on the day in question is not the issue. This is putting the proverbial cart before the horse. The plaintiffs' submissions are not even subject to analysis by the court until the defendants submit evidence demonstrating that the system *was in fact working*. In support of their motion for summary

---

[7]The defendants also contend that the other factors set forth in *McCall*, as discussed in *Coln*, counsel against this court finding that the defendants had a duty of care to the plaintiff under the circumstances. They suggest, for instance, that a finding that the injuries sustained were foreseeable, in the absence of any evidence that the ventilation system was not working, would have the ultimate effect of shutting down pools. We find this to be without merit. This argument presumes that the ventilation system was working. As previously discussed, the defendants fail on their motion because they have not conclusively established that the system was properly working on the day in question.

[8]The defendants argue that the plaintiffs fail on this element of their claim because the hotel did not have notice of the allegedly dangerous condition, *i.e.* the lack of ventilation, until *after* Matthew sustained his injuries. The timing of the notice is only relevant, however, where persons outside the defendant's employ create the dangerous condition. *See Chambliss*, 742 S.W.2d at 273. Since defendants have not proffered any evidence showing this, we hold that there is no merit in the defendants' argument.

judgment, the defendants proffered the following evidence relating to the ventilation system: that the system was hardwired and remained on 24 hours a day; that it could only be turned off by a breaker located in the pool area, which was practically inaccessible to the public, or by an electrical storm, in which case the pool would be closed; that the defendants' employees – namely, their maintenance engineers – were expected to check that the ventilation system was working when they conducted their daily chemical tests of the pool; that if the system was not functioning properly, it would immediately be attended to; and that when Mr. Davis checked the chemical levels and the ventilation system on August 7, 1999, the day *following* the injury, the system was working properly. This evidence certainly casts doubt on the assertion by the plaintiffs that the ventilation system was not working on August 6, 1999; but this is not the issue. The question for us to decide is whether the defendants' evidence negates the plaintiffs' allegation that the indoor pool was not properly ventilated during the relevant time.

As we have previously stated, "[m]aterial supporting a motion for summary judgment must do more than 'nip at the heels' of an essential element of a cause of action; it must *negate* that element." ***Madison v. Love***, No. E2000-01692-COA-RM-CV, 2000 WL 1036362, at \*2 (Tenn. Ct. App. E.S., filed July 28, 2000). The evidence before us does not show that the indoor pool was properly ventilated when the pool was used by Matthew. No one associated with the hotel testified that the indoor pool was properly ventilated during the critical period of Matthew's use. Although the log containing the chlorine and pH levels sufficed to satisfy the defendants' burden on the issue of excessive chlorination in the pool, that log fails to give any indication of the engineer's assessment of the ventilation system. Since there is no evidence unequivocally showing that the ventilation system was working on August 6, 1999, these assertions by the defendants and their agents merely cast doubt on the plaintiffs' claim that the ventilation system was not working. They do not, however, negate the plaintiffs' lack-of-ventilation allegation in a way that would trigger the plaintiffs' burden to proffer evidence that the ventilation system was not working. *See **McCarley***, 960 S.W.2d at 588.[9]

D.

Causation, or cause in fact, deals with the "but for" consequences of the defendant's conduct, that is, that "[t]he defendant's conduct is a cause of the event if the event would not have occurred but for that conduct." ***Kilpatrick v. Bryant***, 868 S.W.2d 594, 598 (Tenn. 1993) (citations omitted). The defendants argue that the evidence proffered by the plaintiffs – namely the testimony of Dr. Ellenburg that Matthew's alleged injuries were caused by exposure to chlorine fumes – fails to demonstrate cause in fact. Yet again, we need not reach the plaintiffs' evidence on this issue where the defendants have failed to negate this element. The defendants proffered no evidence

---

[9]The defendants also rely on ***McGuire v. Exxon Corp.***, No. 02A01-9805-CV-00129, 1999 WL 418343 (Tenn. Ct. App. W.S., file June 22, 1999), in support of their argument that since they had no notice of a dangerous condition, they cannot be found to be negligent. In ***McGuire***, the plaintiff was doused with gasoline when she attempted to put gas in her car. ***Id.,*** at \*1. The court granted the defendant's summary judgment motion on the ground that the plaintiff failed to proffer evidence that the gas station had constructive or actual notice of a dangerous or defective condition at the pump. ***Id.***, at \*3. However, the issue before us is whether the defendants, by failing to ensure that the ventilation system was working, *created* a dangerous condition.

demonstrating that an indoor pool in which the ventilation system was not functioning properly could *not cause* injuries of the type suffered by Matthew. Consequently, where the defendants have failed to negate the causation element, the burden does not shift and thus it is not necessary that we address the strength of the plaintiffs' evidence relating to causation.

In their brief, the defendants contend that there is no testimony that would contradict their claim that the hotel conducted daily pool inspections, that the pool was maintained at proper chlorine levels, and that there was adequate ventilation in the pool and hot tub area. Even if this is the case, it is not this court's duty to make a determination on this issue absent any evidence that on the day on which Matthew Lawson's injuries allegedly occurred, there was adequate ventilation in the pool area. In *McCarley*, the defendant restaurant proffered evidence that cast doubt on the plaintiff's assertion that its food caused his food poisoning. *McCarley*, 960 S.W.2d at 588. The court found, however, that where the evidence proffered by the defendant failed to *exclude* the defendant's food as a potential source of the plaintiff's injuries, summary judgment was not proper. *Id.* Similarly, where the evidence presented casts doubt on the plaintiffs' contention as to what caused Matthew's injuries, but fails to negate improper ventilation from the list of possible causes[10], a genuine issue of material fact exists which must be resolved by the trier of fact.

E.

The test for proximate cause, or legal cause, is three-fold: (1) the defendant's conduct must have been a substantial factor in bringing about the harm complained of; (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the cause of action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence. *Kilpatrick*, 868 S.W.2d at 598, n.1 (citing *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991)). In light of our discussion, it follows that the defendants also failed to satisfy their burden on proximate causation. The defendants attempt to rely on Dr. Ellenburg's deposition testimony[11] in which he stated that if the chlorine and pH levels were normal, and the pool was properly ventilated, he could not have foreseen that Matthew would sustain those injuries. The defendants attempt to rely on this statement to argue that Matthew's injuries were not foreseeable. Yet again, we need not address the sufficiency of this evidence to demonstrate proximate causation when the defendants have failed to negate this element with evidence that a poorly ventilated pool could not cause Matthew's injuries.

---

[10]Lisa McMahan, the inspector for the TDH, testified in her deposition that she had never been taught that high levels of chlorine in the water could release enough gas under certain conditions to cause breathing problems. However, this testimony standing alone fails to negate the possibility that lack of ventilation did, in fact, cause Matthew's breathing problems.

[11]Dr. Ellenburg also testified that it was possible that Matthew's injuries could have stemmed from exposure to smog. The defendants contend that this testimony would impermissibly permit a jury "to engage in conjecture, speculation, or guess work as to which of two equally probable inferences is applicable." *Martin v. Washmaster Auto Ctr.*, *USA*, 946 S.W.2d 314, 317 (Tenn. Ct. App. 1996) (citation omitted). However, we do not reach this issue at the summary judgment stage of the proceedings. Rather, our focus is on whether the defendants successfully negated the possibility that a lack of ventilation *could* cause Matthew's injuries.

Consequently, the plaintiffs' burden of producing evidence on the issue of proximate cause was never triggered.

V.

The trial court's grant of summary judgment to the defendants on the plaintiffs' claim that the Edgewater Hotel's pool contained excessive levels of chlorine is affirmed. The grant of summary judgment to the defendants as to the plaintiffs' claim that the pool was not properly ventilated is hereby vacated. This case is remanded for further proceedings, consistent with this opinion. Exercising our discretion, costs on appeal are taxed to the parties equally.

_____
CHARLES D. SUSANO, JR., JUDGE