IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
January 8, 2008 Session

## MICHAEL HANNAN ET AL. v. ALLTEL PUBLISHING COMPANY

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Circuit Court for Monroe County**
**No. V04370H     John B. Hagler, Jr., Judge**

---

**No. E2006-01353-SC-R11-CV - Filed October 31, 2008**

---

WILLIAM C. KOCH, JR., J., dissenting.

The Court's decision in this case alters summary judgment practice in Tennessee by dramatically changing the moving party's burden of production. From henceforth, parties seeking a summary judgment in Tennessee's courts will no longer be able to shift the burden of production to the nonmoving party by demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of a claim or defense asserted by the nonmoving party. This change in direction goes far beyond what is required to determine whether the summary judgment in this case was or was not appropriate. The Court's decision will undermine, rather than enhance, the utility of summary judgment proceedings as opportunities to weed out frivolous lawsuits and to avoid the time and expense of unnecessary trials.

**I.**

Summary judgments were used extensively in England and in several states before they became a part of the Federal Rules of Civil Procedure in 1937.[1] From the earliest days of their introduction into American jurisprudence, the purpose of summary judgments was to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for [a] trial."[2] As Judge Joseph Hutcheson noted almost seventy years ago,

> [s]ummary judgment procedure is not a catch penny contrivance to take unwary litigants into its toils and deprive them of a trial, it is a

---

[1] 12A Charles Alan Wright et al., *Federal Practice and Procedure* 474-75 advisory committee's note to 1937 adoption of Fed. R. Civ. P. 56, app. C (2008) ("*Federal Practice and Procedure*").

[2] 12A *Federal Practice and Procedure* 477 advisory committee's note to 1963 Amendment to Fed. R. Civ. P. 56(e), app. C.

liberal measure, liberally designed for arriving at the truth. Its purpose is not to cut litigants off from their right of trial by jury if they really have evidence which they will offer on a trial, it is to carefully test this out, in advance of trial by inquiring and determining whether such evidence exists.

*Whitaker v. Coleman*, 115 F.2d 305, 307 (5th Cir. 1940).

Tennessee was not one of the states with a summary judgment procedure when Fed. R. Civ. P. 56 was adopted,[3] and it did not rush to adopt one before it had an opportunity to examine how summary judgments were being used in other federal and state courts. Summary judgments, as we know them today, did not become part of the procedure in Tennessee's courts until the Tennessee Rules of Civil Procedure became effective on January 1, 1970. At that time, the advent of Tenn. R. Civ. P. 56 was hailed as "one of the most important and desirable additions to Tennessee procedure contained in the Rules of Civil Procedure." Tenn. R. Civ. P. 56 cmt.; *see also* Donald W. Pemberton, *Tennessee Rules of Civil Procedure*, 4 Mem. St. U. L. Rev. 211, 215 (1974). Another acknowledged expert on the procedure in Tennessee's courts explained that

> The philosophy of summary judgment is to avoid a needless trial in a case where, although the pleadings may indicate disputes over factual issues, facts outside the pleadings if known would clearly show that there is "no genuine issue as to any material fact."

Donald F. Paine, *Recent Developments in Tennessee Procedure: The New Tennessee Rules of Civil Procedure*, 37 Tenn. L. Rev. 501, 516 (1970).

This Court's decisions in the years following the adoption of the rule reflect that our understanding of the purpose and application of Tenn. R. Civ. P. 56 mirrored the federal courts' application of Fed. R. Civ. P. 56. We noted that summary judgments provided a quick, inexpensive way to conclude cases when there exists no dispute regarding the material facts. *Bowman v. Henard*, 547 S.W.2d 527, 529 (Tenn. 1977); *Evco Corp. v. Ross*, 528 S.W.2d 20, 24-25 (Tenn. 1975). We also noted that summary judgments were not substitutes for trials of disputed factual issues. *Layhew v. Dixon*, 527 S.W.2d 739, 742 (Tenn. 1975). However, we cautioned that summary judgments "go to the merits of the litigation" and, therefore, that a nonmoving party facing a summary judgment should "neither ignore it nor treat it lightly." *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 498 (Tenn. 1978). Rather, when a motion for summary judgment is properly made and supported, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06.

---

[3]This Court, characterizing Tenn. R. Civ. P. 56 as "probably the most far-reaching departure from the past," observed that prior to the adoption of the rule, summary judgments were confined to summary remedies against certain public officials. *Allstate Ins. Co. v. Hartford Accident & Indem. Co.*, 483 S.W.2d 719, 719 (Tenn. 1972).

In 1986, the United States Supreme Court handed down three opinions that refined summary judgment practice in the federal courts.[4] These cases signaled to the lower federal courts that summary judgments could be relied upon, more than they had been in the past, to weed out frivolous lawsuits and to avoid the time and expense of unnecessary trials.[5] Among other things, these opinions clarified the issues surrounding the burden of production and the burden of persuasion under Fed. R. Civ. P. 56.

In particular, the Court's decision in *Celotex Corporation v. Catrett* outlined the standards to be applied when determining whether the moving party has met its summary judgment burden. The defendant in the *Celotex* case supported its summary judgment motion with nothing other than an assertion that the plaintiff had failed to produce any evidence that the defendant's product had caused the plaintiff's injuries. The United States Circuit Court for the District of Columbia reversed the summary judgment after concluding that the summary judgment motion was "fatally defective" because the defendant had "made no effort to adduce *any* evidence, in the form of affidavits or otherwise, to support its motion." *Catrett v. Johns-Manville Sales Corp.*, 756 F.2d 181, 184 (D.C. Cir. 1985).

The United States Supreme Court reversed. Although the Court issued a five-to-four decision, the majority and the dissent agreed regarding how the burden of production and the burden of persuasion in summary judgment proceedings should operate. The justices' disagreement was limited to the application of their agreed-upon principles to the facts of the *Celotex* case. Justice Rehnquist, writing for the majority, stated that there was "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp. v. Catrett*, 477 U.S. at 323. To the contrary, he pointed out that "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. at 325.

Justice White supplied the fifth vote for reversal. He stated in his concurring opinion that "[i]t is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case . . . . It is the defendant's task to negate, if he can, the claimed basis for the suit." *Celotex Corp. v. Catrett*, 477 U.S. at 328 (White, J., concurring). Despite the fact that Celotex Corporation's summary judgment motion was only supported by its assertion that Ms. Catrett had no evidence to prove her case, Justice White concurred in reversing and remanding the case to the circuit court to address the adequacy of Ms.

---

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

[5] 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2727, at 468 (3d ed. 1998).

Catrett's response to Celotex Corporation's motion. *Celotex Corp. v. Catrett*, 477 U.S. at 328-29 (White, J., concurring).[6]

Justice Brennan used his dissenting opinion in *Celotex Corporation v. Catrett* to focus on how and when the burden of production shifted in a summary judgment proceeding. In cases where the burden of proof at trial would be on the nonmoving party, he stated that the moving party could carry its burden of production either by submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or by demonstrating to the trial court that "the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp. v. Catrett*, 477 U.S. at 331. Justice Brennan also explained that the moving party

> must affirmatively show the absence of evidence in the record. This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record. Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party.

*Celotex Corp. v. Catrett*, 477 U.S. at 332. Once a moving party has carried its burden with regard to the sufficiency of the nonmoving party's evidence, Justice Brennan pointed out that the burden of production shifted to the nonmoving party (1) to point to evidence overlooked or ignored by the moving party that establishes a material factual dispute, (2) to rehabilitate the evidence attacked by the moving party, (3) to produce additional evidence showing the existence of a genuine issue for trial, or (4) to submit an affidavit explaining why further discovery is necessary. *Celotex Corp. v. Catrett*, 477 U.S. at 332-33 & n.3.

Many of Tennessee's trial courts and the Court of Appeals began citing and relying on *Celotex Corporation v. Catrett* soon after it was filed.[7] However, differences among the three

---

[6] Some commentators assert that Justice White's concurring opinion is "inconsistent" with Justice Rehnquist's plurality opinion. *See, e.g.*, June F. Entman, *Flawed Activism: The Tennessee Supreme Court's Advisory Opinions on Joint Tort Liability and Summary Judgment*, 24 Mem. St. U. L. Rev. 193, 217 (1994) ("Entman"). Other commentators, however, have noted that Justice White's decision could have been based on the fact that Ms. Catrett had failed to respond to Celotex Corporation's interrogatories seeking information about her evidence of causation. Judy M. Cornett, *The Legacy of* Byrd v. Hall*: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 185 n.66 (2001) ("Cornett").

[7] In *Moman v. Walden*, 719 S.W.2d 531, 533 (Tenn. Ct. App. 1986), the Court of Appeals held that "[u]nder Rule 56.03, upon motion, summary judgment shall be entered against a party who failed to make a showing sufficient to establish the existence of an essential element to that party's case and on which the party will bear the burden of proof at trial. If the non-moving party fails to establish the existence of an essential element, there can be no genuine issue as
(continued...)

sections of the Court of Appeals began to emerge. *Compare Moman v. Walden*, 719 S.W.2d 531 (Tenn. Ct. App. 1986), *and Kilpatrick v. Bryant*, Shelby Eq. No. 3, 1990 WL 165790 (Tenn. Ct. App. Nov. 1, 1990),[8] *with Thurman-Bryant Elec. Supply Co. v. Unisys Corp.*, No. 03A01-9105-CV-00152, 1991 WL 222256 (Tenn. Ct. App. Nov. 4, 1991), *perm. app. denied concurring in results only*, (Tenn. Mar. 25, 1992).[9]

When this Court became aware of the conflicting Court of Appeals opinions regarding the application of *Celotex Corporation v. Catrett* to Tenn. R. Civ. P. 56, we granted an appeal to address the issue. We took the case, not out of a concern that the trial and appellate courts were granting too many summary judgments, but rather because we were convinced that summary judgments were helpful devices, when used appropriately, to resolve disputes in a just, speedy, and inexpensive manner. *Evco Corp. v. Ross*, 528 S.W.2d at 24-25.[10]

The case the Court selected involved the claim of a hospital employee who had been discharged as the head of the Scott County Hospital's radiology department that two physicians had maliciously interfered with his employment. *Byrd v. Hall*, 847 S.W.2d 208, 216 (Tenn. 1993). The defendant physicians filed a summary judgment motion after the plaintiff failed to answer their interrogatories seeking to discover the identity of all persons having knowledge of his claims. The physicians did not support their motion with affidavits, and the plaintiff filed an opposing affidavit on the day that the summary judgment motion was heard. The trial court granted a summary judgment, and the Court of Appeals affirmed after concluding that the plaintiff's failure to respond to the physicians' interrogatories required "the ultimate conclusion that there is no evidence to support [the plaintiff's] complaint." *Byrd v. Hall*, No. 03A01-9104-CV-00116, 1991 WL 169180, at *1 (Tenn. Ct. App. Sept. 5, 1991). This Court reversed the summary judgment because the plaintiff's eleventh-hour affidavit opposing the summary judgment motion created genuine issues of material fact. *Byrd v. Hall*, 847 S.W.2d at 217.

---

[7](...continued) to any material fact since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."

[8]This Court affirmed the summary judgment in part in *Kilpatrick v. Bryant*, 868 S.W.2d 594 (Tenn. 1993).

[9]This Court initially filed an order on March 16, 1992, denying the application for permission to appeal without comment. However, we filed a revised order on March 25, 1992, stating that we did "not concur with some of the language found in the Court of Appeals opinion dealing with *Celotex Corporation v. Catrett*."

[10]If anything, the Court was concerned that the courts were being too hesitant to grant summary judgments in appropriate cases. Robert Banks, Jr. & June F. Entman, *Tennessee Civil Procedure* § 9-4(c), at 9-55 (2d ed. 2004); Lawrence W. Morton, Note, *Summary Judgment*, 9 Mem St. U. L. Rev. 481, 481 (1979) (noting that Tenn. R. Civ. P. 56 "has received a less than enthusiastic reception in much of the judiciary, particularly at the appellate level"); Buckner Wellford, Celotex*, Summary Judgment and the Tennessee Supreme Court: Waiting for the Other Shoe to Drop*, Tenn. B.J., July-Aug. 1992, at 22, 24.

The significance of *Byrd v. Hall* is that the Court explicitly "embraced" the views of Justices Rehnquist, White, and Brennan in *Celotex Corporation v. Catrett* regarding the burden of production and the burden of persuasion in summary judgment proceedings. *Byrd v. Hall*, 847 S.W.2d at 214. The Court approved both burden-shifting methods identified by Justice Brennan as permissible ways for the moving party to carry its burden of production in a summary judgment proceeding.

With regard to the first burden-shifting method, we stated that the moving party could carry its burden by "affirmatively negat[ing] an essential element of the nonmoving party's claim." *Byrd v. Hall*, 847 S.W.2d at 215 n.5. With regard to the second burden-shifting method, we stated that a moving party "would be entitled to summary judgment if he [or she] demonstrated that the nonmoving party cannot establish an essential element of his [or her] case." *Byrd v. Hall*, 847 S.W.2d at 215 n.5. We explained that a "summary judgment is appropriate when, after being given a reasonable opportunity to substantiate its claims, the nonmoving party is unable to establish any essential element of its case on which it will have the burden of proof at trial." *Byrd v. Hall*, 847 S.W.2d at 213. We reenforced this point when we stated that granting a summary judgment is appropriate if, after sufficient time for discovery has elapsed, the nonmoving party is unable to demonstrate that he or she can present sufficient evidence at trial to withstand a motion for directed verdict. *Byrd v. Hall*, 847 S.W.2d at 213.[11]

While our decision in *Byrd v. Hall* has not escaped criticism,[12] it has also been credited with providing "a firm foundation for a stable summary judgment practice" that "may well have spared Tennessee some of the problems that have been noted in federal practice." Cornett, 69 Tenn. L. Rev. at 176. While this Court has not again explicitly repeated its endorsement of the ability of a moving party to satisfy its burden of production by demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim or defense, the trial courts and the Court of Appeals have repeatedly interpreted Tenn. R. Civ. P. 56 to permit moving parties to do precisely that. *See, e.g.*, *Holt v. Pyles*, No. M2005-02092-COA-R3-CV, 2007 WL 1217264, at *8 (Tenn. Ct. App. Apr. 24, 2007), *perm. app. denied* (Tenn. Sept. 17, 2007); *Denton v. Hahn*, No. M2003-00342-COA-R3-CV, 2004 WL 2083711, at *11 (Tenn. Ct. App. Sept. 16, 2004) (No Tenn. R. App. P. 11 application filed); *Cagle v. Gaylord Entm't Co.*, No. M2002-00230-COA-R3-CV, 2002 WL 31728866, at *3 (Tenn. Ct. App. Dec. 5, 2002), *perm. app. denied* (Tenn. June 30, 2003); *Wilson v. Rubin*, 104 S.W.3d 39, 47 (Tenn. Ct. App. 2002); *Fleck v. Cooper Realty Mgmt. Co.*, 84 S.W.3d 600, 602 (Tenn. Ct. App. 2002); *Blair v. Allied Maintenance Corp.*, 756 S.W.2d 267, 270 (Tenn. Ct. App. 1988); *Moman v. Walden*, 719 S.W.2d at 533.

---

[11]Despite the fact that we explicitly "embraced" Justice Brennan' second method of shifting the burden of production in *Byrd v. Hall*, the Court now states that "[w]e did not adopt Justice Brennan's second method of burden-shifting." While this cramped reading of *Byrd v. Hall* is consistent with the results that the Court desires to reach in this case, it is entirely inconsistent with not only the language of *Byrd v. Hall* but also the subsequent interpretation of *Byrd v. Hall* by Tennessee's courts.

[12]Cornett, 69 Tenn. L. Rev. at 180-93; Entman, 24 Mem. St. U. L. Rev. at 206-26.

While this Court has issued a number of opinions narrowly construing *Byrd v. Hall*,[13] it has not, at least until today, expressly repudiated the plain language in *Byrd v. Hall* embracing Justice Brennan's second burden-shifting method. Thus, trial and appellate courts have continued to employ Justice Brennan's second burden-shifting method. Many of the intermediate appellate court opinions were officially reported after this Court denied permission to appeal. Accordingly, under Tenn. Sup. Ct. R. 4(G)(2), these decisions became "controlling authority for all purposes." These cases are controlling authority no longer.

## II.

The Court's decision in this case brushes aside fifteen years of post-*Byrd v. Hall* decisions relying on *Byrd v. Hall*'s version of Justice Brennan's second burden-shifting method. Parties seeking a summary judgment will no longer be able to shift the burden of production to the nonmoving party by demonstrating that the nonmoving party's evidence is insufficient, as a matter of law, to establish an essential element of one of the nonmoving party's claims or defenses. Now, parties seeking a summary judgment will be able to shift the burden of production only when they (1) establish an affirmative defense as a matter of law or (2) demonstrate that the nonmoving party cannot establish an essential element of a claim or defense for which it will have the burden of proof at trial.

Such a dramatic change in established summary judgment practice prompts several questions. The foremost question is why does the Court now believe this change as necessary? Is *Celotex Corp. v. Catrett*, as construed by *Byrd v. Hall*, bad law? Are summary judgments no longer needed to weed out frivolous lawsuits and to avoid the time and expense of unnecessary trials? Are properly made and supported summary judgment motions somehow interfering with the litigants' constitutionally protected right to a jury trial?[14] Does the Court now believe that summary judgments

---

[13]These decisions have relied on the ambiguous language in footnote 5 of *Byrd v. Hall* stating that a moving party could carry its burden of production by "affirmatively negat[ing] an essential element of the nonmoving party's claim" rather than the clear language elsewhere in *Byrd v. Hall* stating that a "summary judgment is appropriate when, after being given a reasonable opportunity to substantiate its claims, the nonmoving party is unable to establish any essential element of its case on which it will have the burden of proof at trial." *Byrd v. Hall*, 847 S.W.2d at 213. *See, e.g. Doe 1 ex rel. Doe 1*, 154 S.W.3d 22, 41 (Tenn. 2005); *Blair v. West Town Mall*, 130 S.W.3d 761, 767 (Tenn. 2004); *Staples v. CBL & Assoc., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1997).

[14]This question must certainly be answered in the negative. *State v. Malady*, 952 S.W.2d 440, 443 (Tenn. Crim. App. 1996); *Union Planters Nat'l Bank of Memphis v. Inman*, 588 S.W.2d 757, 760 (Tenn. Ct. App. 1979); *see also Martin v. Norfolk Southern Ry.*, No. E2006-01021-COA-R3-CV, 2007 WL 1958644, at *8 (Tenn. Ct. App. July 6, 2007) (Susano, J., dissenting) (observing that it is a "bedrock principle" that "a party's jury demand and its right to pursue its alleged cause of action can be legitimately thwarted if the party sued can demonstrate, under the rubric of Tenn. R. Civ. P. 56, that it is entitled to summary judgment. Hence, if the material facts pertaining to a defense are not in dispute and if those facts show conclusively that the defendant is entitled to a judgment, the plaintiff loses its constitutional right to a jury trial, its case is over, and the defendant goes away with summary judgment"), *perm. app. granted* (Tenn. Nov. 13, 2007).

inappropriately favor one side in litigation more than another? The Court's opinion provides few answers.

There can be little doubt that litigation has increased since the 1960s. While many keen observers of American courts deny that this phenomenon is symptomatic of exaggerated litigiousness, unfettered and excessive awards, or fundamental problems with substantive law,[15] they agree that the caseload has grown.[16] The National Center for State Courts found that all incoming cases in state trial courts (defined as newly filed, reopened, and reactivated cases) rose in 2005, exceeding 100 million for the second time in ten years.[17] Between 1984 and 1993, civil and criminal caseloads in state courts increased by thirty percent, outstripping the eight percent increase in population.[18] A report by the Rand Corporation's Institute for Civil Justice found that nationwide, tort litigation showed a growth of three percent between 1981 and 1984 but that higher-stakes torts such as malpractice and product liability were growing quickly and that mass latent injury torts "tend to explode in number."[19]

---

[15]Marc Galanter, *The Turn Against Law: The Recoil Against Expanding Accountability*, 81 Tex. L. Rev. 285, 298 n.79, 301 (2002) (rejecting the portrayal of a world of "ubiquitous litigation, outlandish claims, and excessive awards" advanced by the media and such "canonical antilitigation texts" as Walter K. Olson's *The Litigation Explosion* (1991)). *See also* Deborah R. Hensler et al., Rand Inst. for Civil Justice, *Trends in Tort Litigation*, at 24 (1987).

[16]Marc Galanter, *The Vanishing Trial: An Examination of Trials and Related Matters in Federal and State Courts*, 1 J. Empirical Legal Stud. 459, 485 (2004) *available at* http://marcgalanter.net/Documents/papers/ thevanishingtrial.pdf (noting the number of filings in the federal courts has increased fivefold from 1962 to 2002); Marc S. Galanter, *Reading the Landscape of Disputes: What We Know and Don't Know (And Think We Know) About our Allegedly Contentious and Litigious Society*, 31 UCLA L. Rev. 4, 37 (1983) (finding large increase in federal filings and an increase in per capita filings); Marc Galanter, *Beyond the Litigation Panic*, 37 Proceedings of the Acad. of Political Sci. 18, 18, 19 (1988) *available at* http://marcgalanter.net/Documents/beyondthelitigationpanic.pdf (stating that "[p]er-capita rates of filing civil cases have risen in most localities in recent decades" but concluding that the data for the years 1978-1984 "portray nothing that resembles the supposed explosion"); Arthur R. Miller, *The Pretrial Rush to Judgment: Are the "Litigation Explosion," "Liability Crisis," and Efficiency Clichés Eroding Our Day in Court and Jury Trial Commitments?*, 78 N.Y.U. L. Rev. 982, 994-95 (2003) (noting that "some evidence indicates that the volume of litigation has increased" but arguing that there is no increase in the proportion of lawsuits to injuries). *See also* Galanter, 81 Tex. L. Rev. at 287 (noting that the proportion of lawyers in the population increased around 1970 and more than doubled by the end of the century).

[17]*Examining the Work of State Courts, 2006: A National Perspective from the Court Statistics Project* 21 (Robert C. LaFountain et al., eds., National Center for State Courts 2007) *available at* http://www.ncsconline.org/ D_Research/csp/2006_files/EWSC-2007WholeDocument.pdf.

[18]Neal Kauder, *National State Court Caseload Trends, 1984-1993*, Caseload Highlights (Nat'l Ctr. for State Courts, Williamsburg, Va.), Aug. 1995, at 1, *available at* http://www.ncsconline.org/d_research/CSP/Highlights/ vol1no1.pdf.

[19]Hensler, *Trends in Tort Litigation,* at 6, 30 (explaining the discrepancy in numbers used by opponents and proponents of the tort reform debate by demonstrating discordant trends in subcategories of tort suits).

Increases in the caseload lead to delay[20] and threaten to sap already scarce judicial resources.[21] In *Examining the Work of State Courts, 2006*, the National Center for State Courts noted that "with numbers of this magnitude, the drain on state court resources should not be underestimated."[22] The Center also found that "the number of trial judges and courtrooms has not kept pace with increases in filings."[23]

Tennessee is no exception, with a clearance rate below one hundred percent in 2005.[24] It is true that "[s]low justice is bad, but speedy injustice is not an admissible substitute."[25] However, summary judgments, by performing the essential task of weeding out meritless claims,[26] strive to accomplish the twin goals of justice and celerity. As one commentator noted, the *Celotex* decision "fostered the value of procedural efficiency, reduced the danger of harassment of defendants, and reduced the possibility of a jury's perversion of the substantive/procedural balance by means of improper and unauthorized wealth redistribution."[27] Given the rise in litigation and the concomitant

---

[20]On delay, *see generally*, Barry Mahoney, *Changing Times in Trial Courts* 210-11 (National Center for State Courts 1988) *available at* http://www.nesonline.org (concluding that "in a number of courts a high percentage of cases take longer...than the maximum time periods set forth in either the standards adopted by the American Bar Association or those endorsed by the Conference of Civil Justice"); Benjamin R. Civiletti, *Zeroing in on the Real Litigation Crisis: Irrational Justice, Needless Delays, Excessive Costs*, 46 Md. L. Rev. 40, 44-46 (1986).

[21]*See* Kauder, *National State Court Caseload Trends, 1984-1993*, at 1 (noting that in 1993, state courts of general jurisdiction heard 85 times as many criminal and 27 times as many civil cases as federal district courts, while operating with only 14 times as many judges).

[22]*Examining the Work of State Courts, 2006*, at 21. *See also* David B. Rottman, *Trends and Issues in the State Courts: Challenges and Achievements, in The Book of the States* 236 (The Council of State Governments 2004) (finding that "the overall demand for access to state judges' time remains strong and likely to increase").

[23]Paula Hannaford-Agor et al., *Trial Trends and Implications for the Civil Justice System*, Caseload Highlights (Nat'l Ctr. for State Courts, Williamsburg, Va.), June 2005, at 5, *available at* http://www.ncsconline.org/d_research/CSP/Highlights/Vol11No3.pdf (explaining the decline in both bench and jury trials by pointing to such institutional limitations, in addition to case flow management techniques and ADR). *See also* Rottman, *Trends and Issues in the State Courts*, at 239 (noting that the "flood tide" of new and varied demands "challenges the institutional capacity of the state courts").

[24]*Examining the Work of State Courts, 2006*, at 30 (noting that "[i]f a state is unable to dispose of as many cases as are incoming, [its] clearance rate will be below 100 percent, [its] pending caseload is likely to grow, and an increase in [its] backlog may also result"). The report also found that in 2005, there were 1,924 incoming non-traffic cases per judge in this state. *Examining the Work of State Courts, 2006*, at 22.

[25]Mahoney *Changing Times in Trial Courts*, at 205 (quoting Maurice Rosenberg, *Court Congestion: Status, Causes, and Remedies, in The Courts, the Public and the Law Explosion* 56 (Harry W. Jones, ed. 1965)).

[26]Miller, 78 N. Y. U. L. Rev. at 1016.

[27]Martin H. Redish, *Summary Judgment and the Vanishing Trial: Implications of the Litigation Matrix*, 57 Stan. L. Rev. 1329, 1348 ( 2005).

demand on state judicial resources, it is essential to maintain the courts' ability to dispose of meritless litigation.

The Court's decision prompts a second question. What practical effect will this decision have on litigation in Tennessee's courts? The answer is that its effects will be significant and far-reaching. It will provide another safe harbor for those who are unprepared. In cases in which expert evidence is necessary to prove an essential element of a plaintiff's claim, such as medical malpractice cases,[28] defendants will no longer be entitled to a summary judgment when they demonstrate that the plaintiff's expert is not qualified to render an opinion. Successfully challenging a particular expert's qualifications does not demonstrate that the plaintiff cannot prove an essential element of its case. It simply demonstrates that the plaintiff cannot establish an essential element of its case *with that expert*. Thus, rather than the litigation ending with the disqualification of the expert, it will continue while the plaintiff attempts to find yet another expert. Determining how many chances a plaintiff must be given to find a qualified expert before a case can be dismissed remains an open question.[29]

**III.**

The Court's opinion in this case creates a safe harbor for two plaintiffs who, almost four years after they filed their complaint, are still unable to substantiate their claim that Alltel Publishing Company's ("Alltel") failure to include their listings in the local telephone book caused them $225,000 in damages. When Mr. Hannan was deposed over one year after filing the complaint, he stated that it was "impossible" to identify the records or documents that could quantify the losses he and his wife were claiming. He also testified that it was "impossible" to specify any business that the couple lost. Likewise, when Ms. Hannan was asked to quantify their losses, she stated, "I have absolutely no way of doing that. And neither does anyone else."

Damages are often not susceptible to exact computation, *Provident Life & Accident Ins. Co. v. Globe Indem. Co.*, 156 Tenn. 571, 576, 3 S.W.2d 1057, 1058 (1928), and must be left to the

---

[28] Summary judgments are regularly and frequently granted when the courts determine that the plaintiff's expert does not meet the requirements of Tenn. Code Ann. § 29-26-115(b) (Supp. 2008). *See, e.g., Eckler v. Allen*, 231 S.W.3d 379, 387 (Tenn. Ct. App. 2006); *Kenyon v. Handal*, 122 S.W.3d 743, 765-66 (Tenn. Ct. App. 2003); *Totty v. Thompson*, 121 S.W.3d 676, 681-82 (Tenn. Ct. App. 2003); *Roberts v. Bicknell*, 73 S.W.3d 106, 115 (Tenn. Ct. App. 2001); *Dunham v. Stones River Hosp., Inc.*, 40 S.W.3d 47, 52 (Tenn. Ct. App. 2000); *Mabon v. Jackson-Madison County Gen. Hosp.*, 968 S.W.2d 826, 831 (Tenn. Ct. App. 1997); *Rose v. H.C.A. Health Servs. of Tenn., Inc.*, 947 S.W.2d 144, 149 (Tenn. Ct. App. 1996); *Ayers v. Rutherford Hosp., Inc.*, 689 S.W.2d 155, 163 (Tenn. Ct. App. 1984).

[29] Over thirty years ago, we warned the bar about the perils of taking summary judgment motions too lightly. *Fowler v. Happy Goodman Family*, 575 S.W.2d at 498. Regrettably, this advice has not always been heeded. Even today, far too many lawyers find themselves unprepared when their adversary's summary judgment motion is heard. After the summary judgment is granted against their client, these lawyers gather the evidence they should have presented at the summary judgment hearing and, invoking Tenn. R. Civ. P. 59, ask for a second opportunity to defend against the summary judgment motion. This Court granted them this procedural "do over" in *Stovall v. Clarke*, 113 S.W.3d 715, 724 (Tenn. 2003).

impartial judgment of the jury. *Goodall v. Thurman*, 38 Tenn. (1 Head) 209, 217-18 (1858); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999). However, a plaintiff must nevertheless provide sufficient evidence to enable the trier of fact to make a fair and reasonable assessment of the damages. *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 230 (Tenn. Ct. App. 2006); *Waggoner Motors, Inc. v. Waverly Church of Christ*, 159 S.W.3d 42, 57 (Tenn. Ct. App. 2004). While the evidence regarding damages need not be mathematically precise, *Brown v. Chesor*, 6 S.W.3d 479, 483 (Tenn. Ct. App. 1999), it must prove both the existence and the amount of damages with reasonable certainty. *Wright Med. Tech., Inc. v. Grisoni*, 135 S.W.3d 561, 595 (Tenn. Ct. App. 2001); *Overstreet v. Shoney's Inc.*, 4 S.W.3d at 703.

When damages are an essential element of a plaintiff's cause of action, a defendant may prevail on a motion for summary judgment by demonstrating that the plaintiff has failed to produce evidence of its damages. *Independence Ins. Serv. Corp. v. Hartford Life Ins. Co.*, 472 F. Supp. 2d 183, 192 (D. Conn. 2007); *Maier-Schule GMC, Inc. v. General Motors Corp.*, 154 F.R.D. 47, 56 (W.D.N.Y. 1994); *Monroe v. Hyundai Motor Am., Inc.*, 606 S.E.2d 894, 897 (Ga. Ct. App. 2004); *Rocci v. MacDonald-Cartier*, 731 A.2d 1205, 1209 (N.J. Super. Ct. App. Div. 1999). Accordingly, courts have granted motions for summary judgment in cases where the plaintiff offered no evidence of damages other than the allegations in its complaint, *Draft-Line Corp. v. Hon Co.*, 781 F. Supp. 841, 846 (D.P.R. 1991), or where the president of the plaintiff corporation testified that the basis for the $4,000,000 damage claim was nothing more than his "feeling." *Zirin Labs. Int'l, Inc. v. Mead-Johnson & Co.*, 208 F. Supp. 633, 636 (E.D. Mich. 1962).

However, the requirement that a plaintiff prove its damages does not necessarily place the burden on the plaintiff to produce detailed evidence of damages at the summary judgment stage because that sort of evidence goes to the amount of the plaintiff's damages, not to the plaintiff's right to recover. When faced with a motion for summary judgment challenging the adequacy of its evidence of damages, a plaintiff need only demonstrate that damages exist and that they are not entirely speculative. *Cormier v. Dist. of Columbia Water & Sewer Auth.*, 946 A.2d 340, 348 (D.C. 2008); *see also Allard v. Arthur Andersen Co. (USA)*, 924 F. Supp. 488, 491-92 (S.D.N.Y. 1996); *Carswell Trucks, Inc. v. Int'l Harvester Co.*, 334 F. Supp. 1238, 1239 (S.D.N.Y. 1971); *Petty v. Chrysler Corp.*, 799 N.E.2d 432, 439 (Ill. App. Ct. 2003); *Carroll v. Phila. Hous. Auth.*, 650 A.2d 1097, 1100 (Pa. Commw. Ct. 1994); *AccuWeb, Inc. v. Foley & Lardner*, 746 N.W.2d 447, 453 n.8 (Wis. 2008).

While the existence of damages is an essential element of the Hannans' claim, so is evidence establishing the amount of these damages with reasonable certainty. Thus, the Court of Appeals did not go far enough when it decided to reverse the trial court solely because Alltel did not "prove" that the Hannans had not been damaged by the absence of the listings in the November 2003 telephone book. The court overlooked the fact that at trial, the Hannans would also be required to prove not only the existence but also the amount of their damages with reasonable certainty.

The Hannans and their lawyer regrettably did not give the courts much to go on. Even when the evidence is viewed in the light most favorable to the Hannans, it is difficult to reach any

-11-

conclusion other than that the record does not contain enough evidence to enable a jury to do anything more than speculate about that amount of the Hannans' damages. There is simply no evidence establishing the amount of the Hannans' damages with reasonable certainty. Accordingly, I would hold that Alltel carried its burden of production with regard to its summary judgment motion and that the burden of production shifted to the Hannans to demonstrate that their claim for damages should be presented to a jury. I would also hold that, even though the Hannans had over fifteen months to marshal their evidence of damages, they failed to demonstrate both that they had been damaged and that awarding them damages would not be entirely speculative. Accordingly, the trial court properly granted Alltel's motion for summary judgment.

_____
WILLIAM C. KOCH, JR., JUSTICE